BERNARD McMENAMY
CONTRACTOR, INC.,
Plaintiff-Appellant,

v.

Lovelace KITCHEN, Defendant,

and

Alton Box Board Company,
Defendant-Respondent.

No. 48082.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 2, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 5, 1985.

Application to Transfer Denied
Aug. 7, 1985.

Hal B. Coleman, Clayton, for plaintiff-appellant.

Thomas C. Walsh, St. Louis, for defendant-respondent.

CHANNING D. BLAEUER, Special Judge.

Bernard McMenamy Contractor, Inc. (McMenamy) brought suit against co-defendants Lovelace Kitchen (Kitchen) and Alton Box Board Company (Alton) to recover for services rendered clearing a tract of land on a Mississippi River island near Harvester, Missouri. McMenamy settled with Kitchen, and the trial court subsequently sustained Alton's motion for summary judgment. From the sustention of this motion, McMenamy appeals. We affirm.

Alton owned the tract of land, approximately 500 acres, which McMenamy cleared. On March 2, 1976, Alton and Kitchen executed a written "Farm Lease and Agreement" which called for Kitchen to clear and farm the land. Several weeks later, McMenamy entered into an agreement with Kitchen to clear the land at a cost of $75 per hour per tractor. Alton was not a party to the Kitchen/McMenamy contract, nor did Alton guarantee it. McMenamy's bill for work performed under the agreement with Kitchen exceeded $222,000.

McMenamy filed this action alleging that Kitchen and Alton were partners, and therefore jointly and severally liable for payment of the bill.

It appears from the record that Kitchen was unable to pay the bulk of the debt to McMenamy. McMenamy released its claim against Kitchen in exchange for some farm equipment, which it took subject to an outstanding security interest.

Subsequent to the release of McMenamy's claim against Kitchen, the trial court sustained Alton's motion for summary judgment, implicitly finding that the relationship between Kitchen and Alton was not a partnership.

In support of its motion for summary judgment, Alton submitted affidavits of Kitchen and Alton's corporate secretary to the effect that there were no collateral agreements between Alton and Kitchen, and that their relationship was fully governed by the terms of the "Farm Lease and

Agreement" executed by them. Kitchen's affidavit further stated that he entered into the agreement with McMenamy without conferring with or requesting the approval of Alton, and that he was not an employee of Alton.

■ McMenamy offered no counter-affidavits to controvert these facts, and conceded the accuracy thereof. Summary judgment is an appropriate remedy where there exists no doubt as to material facts, Rule 74.04, *Lammert Furniture Co. v. American National Stores*, 619 S.W.2d 323 (Mo.App.1981), particularly where, as here, the issue to be resolved is the construction of a contract which is unequivocal on its face. *Adzick v. Chulick*, 512 S.W.2d 194 (Mo.App.1974).

With this appeal, McMenamy urges that we reverse the trial court's determination that Kitchen and Alton are not partners under the terms of the "Farm Lease and Agreement," the relevant terms of which are as follows:

FARM LEASE AND AGREEMENT

WHEREAS, Alton Box Board Company ... is the owner of a certain tract of land approximately 500 acres in size ...

WHEREAS, Lovelace Kitchen (KITCHEN) desires to lease said tract of land for farming operations, ...

ALTON hereby agrees to lease to KITCHEN, and KITCHEN hereby agrees to lease from ALTON, the aforementioned tract of land under the terms and conditions stated hereafter:

1. This lease shall be for a period of five years beginning February 16, 1976, and ending December 31, 1981.

It is agreed, however, that in the event ... any "Parcel" ... fails to produce a crop for one growing season ... this lease shall be extended for that Parcel only, for one additional growing season ... In no event, however, shall the lease be extended for any Parcel beyond the seventh growing season.... [A] "Parcel" shall be deemed to mean any contiguous area of land ... of apprximately twenty (20) acres ...

2. Rental for the land shall be One Dollar for the initial five seasons, except as mentioned below. Consideration to ALTON for the rental of the land is the improvement in the condition of the soil and the land surface, the application of fertilizer, and the treatment of the land in a husbandry-like manner, all as required by this instrument. All reports and accounts submitted to KITCHEN's auditors shall also be submitted to ALTON.

When and if KITCHEN realizes a total income from the farming operation under this Lease, during the entire initial five growing seasons period of this Lease, in excess of an amount equal to the total costs and expenses ... plus One Hundred Thousand Dollars ($100,000), then additional income shall be divided equally between the Parties after payment of costs and expenses. "Costs and Expenses" are defined as KITCHEN's total cost of production for the five years, excluding therefrom, however, his own labor expended or used directly on the land. No charge shall be entered in calculating said Costs and Expenses for the use of the land by KITCHEN, or for rent to ALTON, of which there will be none.... It is the intention of the Parties that the actual cash outlay by KITCHEN for the farming of this land over the period of the initial five growing seasons shall be recovered in its entirety by KITCHEN from the farming income attributable to the land, plus an additional One Hundred Thousand Dollars ($100,000.), before ALTON shall be paid any monetary payments. However, additional profit over said amount for such period shall be divided equally between KITCHEN and ALTON.

3. During the period of this Lease, KITCHEN will be responsible for the removal of substantially all of the roots, stumps and brush from the tillable portion of the land, fertilizing, and for the planting thereof into grain crops ... A part of the treatment shall consist of the

application of lime and fertilizer, weed control chemicals and other approved practices which shall be deemed necessary in the opinion of the Parties hereto and of the consultant on the land, Doane Agricultural Service, Inc., to improve the quality of the land sufficiently to meet a standard of Soil Conservation Service test for grain crop land.

4. It is agreed by the Parties hereto that Doane Agricultural Service, Inc., may be retained as a consultant in the management of the land at a cost of not less than one hundred dollars ($100.00) per month, which amount shall be paid by KITCHEN....

6. It is agreed that KITCHEN shall have the right of first refusal of any renewal of any farm rental or purchase agreement on the subject tract during the term hereof and for a period of ten years after the termination of the initial term that is until February 15, 1991....

8. KITCHEN shall have no right to sublease all or any part of the subject property without the express written permission of ALTON.

9. KITCHEN shall not be considered an agent or partner of Alton and neither shall have the right to bind or obligate the other without written consent except at [sic] specifically provided herein....

10. ALTON will initially and from time to time thereafter be doing work on the land and reserves the right for itself, its agents, employees and tenants to enter on the land at any time ...

Missouri's Uniform Partnership Law defines partnership as "an association of two or more persons to carry on as co-owners a business for profit." § 358.060, RSMo. It is defined by the courts as "a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." *Stuart v. Overland Medical Center*, 510 S.W.2d 494 (Mo.App.1974).

█ ˙ A partnership agreement may be oral or written, express or implied from the acts and the conduct of the parties, the primary criterion being the intention of the parties. *Schneider v. Schneider*, 146 S.W.2d 584 (Mo.1940). Intent to form a partnership is not necessary. It is the parties' intent to enter a relationship which in law constitutes a partnership. *Prasse v. Prasse*, 77 S.W.2d 1001 (Mo.1934). Thus, the recitation in the instant agreement that the parties are not to be considered partners is not dispositive of the determination of this case if, from other provisions in the agreement can be found an intent to be partners.

█ McMenamy asserts that it is possible for a lease agreement to give rise to a partnership, and cites us to *Steckman v. Gault State Bank*, 126 Mo.App. 664, 105 S.W. 647 (1907). We agree. Our task, however, is to decide whether the "Farm Lease and Agreement" creates a partnership, notwithstanding the landlord/tenant relationship between the landlord, Alton, and the tenant, Kitchen.

McMenamy's view is that the agreement creates a partnership because of the manner in which the parties are to share profits, and because Alton retained a voice in management of the farm.

We first deal with the issue of how the parties were to share profits.

Section 358.070, RSMo. states, in relevant part:

(4) The receipt of a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(b) as ... rent to a landlord.

McMenamy first cites us to the case of *Donnell v. Harshe*, 67 Mo. 170 (1877), which says that the sharing of profits in conjunction with a showing of a "community of interests" in the subject matter of the undertaking are essential to the partnership relationship. In that case, an agreement in which one party was to farm the land of another, with profits to be split

between them, was held not to constitute a partnership.

McMenamy also directs us to *Kellogg Newspaper Co. v. Farrell*, 88 Mo. 594 (1886), which announces the distinction between the receipt of "profits as profits," as with a partnership, and the receipt of profits as rent, as with a lease. There, the court held that an agreement whereby the owner of a newspaper, which was operated by another, was to receive half the profits of the enterprise, did not constitute a partnership. The court held that division of the profits was a means of assessing rent, not a receipt of "profits as profits."

█ We believe Alton's right to half the net profits of the farming operation exceeding $100,000 falls within the exception of "rent to a landlord" set forth above.

█ McMenamy invites us to look further, directing our attention to the portion of the contract defining "costs and expenses" for purposes of delineating what will be deducted from "total income" to arrive at net profit. It says, "costs and expenses are defined as Kitchen's total cost of production for the five years, excluding ... labor expended or used directly on the land. No charge shall be entered in calculating said Costs and Expenses for the use of the land by Kitchen, *or for rent to Alton, of which there will be none.*" [Emphasis added.] McMenamy argues that the recitation that no rent is to be figured into the calculation means that Alton's portion of the net income exceeding $100,000 is to be received as profit, not rent. We cannot agree. The contract states that Alton is to receive income from the farming operation "when and if" sufficient profit is realized. We believe the potential to share in some of the profits was never intended to be Alton's primary consideration for the use of the land. Consideration to Alton under the contract consisted, for the most part, of Kitchen's promise to clear and improve the land so that it could be farmed. The relative importance of this promise to Alton is evidenced by the fact that McMenamy charged Kitchen $222,000 to do the work called for. This interpretation is bolstered by the fact that Alton was to retain the use of the land at the end of the lease term. Any right of Alton to profits was merely incidental consideration, in light of what appears to us to be its principal desire to have the land cleared and developed for farming.

Lastly, we consider McMenamy's claim that Alton's voice in management indicates its intention to be a partner.

█ Indicia of a partnership relationship include a right to a voice in management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors. *Schneider*, supra; *Stuart*, supra.

█ While the agreement: (1) provides guidelines to be followed in the development of the land; (2) requires that all Kitchen's auditor's reports and accounts be submitted to Alton; and (3) designates an agricultural consultant that may be retained by Kitchen (and paid by Kitchen), we feel that these provisions are merely Alton's means of insuring Kitchen's continued satisfactory performance of the agreement. We construe nothing in the agreement as giving Alton any right to participate in the day-to-day management of the farming operation. The agreement places full responsibility on Kitchen to clear and farm the land.

Moreover, nowhere in the contract does Alton agree to bear the risk of any loss or liability incurred by Kitchen in the performance of his contractual obligation.

We have examined the entire agreement and can find no intention inconsistent with the statement of the parties Alton and Kitchen in paragraph 9 of their agreement that they are not to be considered "an agent or partner" of one another, and "neither shall have the power to bind or obligate the other without written consent."

For these reasons, we hold that Kitchen and Alton did not have a partnership under the terms of the "Farm Lease and Agree-

ment." Alton's motion for summary judgment was properly sustained.

The judgment of the trial court is affirmed.

CRANDALL, P.J., and JEAN C. HAMILTON, Special Judge, concur.