Kathy Deanne MITCHELL, Appellant,

v.

Ronald Elmer MITCHELL, Respondent.

No. 64837.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 6, 1994.

---

Nelson B. Rich, St. Louis, for appellant.

Stephen C. Moore, Colleen M. Hubble, Clayton, for respondent.

DOWD, Judge.

Wife appeals the trial court's denial of her motion to set aside the dissolution decree incorporating the parties' separation agreement and for a new trial, alleging: (1) the agreement was unconscionable because Hus-

band misled her and the court as to the value of his pension plan and 401K plan, (2) the agreement was based on a mutual mistake as to the value of the pension plan and 401K plan, (3) Wife did not freely and voluntarily agree to the terms of the agreement, and (4) the agreement was not in the best interest of the parties' minor child. We affirm.

Husband and Wife were first married on November 9, 1968. The parties had one minor child (Son) born March 25, 1978. They also previously divorced and remarried before separating in August 1991. In November 1991, Wife filed a Petition for Dissolution. A hearing on the petition was set for June 22, 1993. At 9:30 a.m. on the day of the hearing, Husband and Wife appeared in court with their attorneys to discuss a settlement. The guardian ad litem representing Son was also present. After a day long negotiation, Husband and Wife entered into a settlement agreement. They both signed the agreement and asked the trial judge to approve it.

According to the separation agreement, Wife was to receive the following major items of marital property: (1) Two parcels of rental property located in the City of St. Louis, (2) a 1991 Ford Explorer, (3) a savings account, (4) all interest accrued up to the time of dissolution in a pension plan payable to Husband, (5) two IRA accounts and death benefits payable under the pension plan, and (6) the 703 shares of Anheuser Busch stock in Husband's 401K plan and the $4,938.41 in his short-term fixed income fund. The major items of marital property awarded to Husband were the marital home located at 22 Sackston Woods, Creve Coeur, Missouri, and a 1983 Cadillac.

At the dissolution hearing, Husband testified the pension would be worth approximately $817 per month when he was ready for retirement; and he stated he believed the value of the pension would be $150,000 at a minimum. He also said the 703 shares of Anheuser Busch stock were worth about $40,000, and the two IRA's were worth about $15,000 together. Although there was no testimony regarding the value of the marital home, the parties' property statements indicated it was worth between $300,000 to $320,-000 and was subject to a loan of approximately $28,000.

During the dissolution proceedings, neither party testified as to the value of the rental properties awarded to Wife. However, at the motion hearing, Wife testified Husband told her the property at 4326 Osage was worth about $40,000 and was subject to a debt of $31,044. This property was appraised prior to the motion hearing and was valued at $49,000. Wife also testified Husband told her the property at 3652-54 Louisiana was worth $45,000 and was not subject to any debt. This property was appraised at $55,000.

The separation agreement also divided the parties' furniture and personal property and awarded Wife sole legal and physical custody of Son. Wife was to receive $475 per month in child support, and both parties agreed to waive maintenance. The agreement also awarded Husband two lots in Venice, Florida, as his separate property. After both Husband and Wife asked the trial court to approve the separation agreement, the court found the agreement was not unconscionable and incorporated it into the dissolution decree.

On June 30, 1993, Wife filed a Motion to Set Aside Decree and for a New Trial. At the hearing on this motion, Kathleen McGann, the benefits analyst for Anheuser Busch, testified Husband had 18 years, 5 months of credited service. She stated Wife could start collecting this portion of Husband's pension benefits in 4½ years, when he turned 55. McGann also stated Wife would be allowed to participate in any subsequent increases in Husband's pension rate. Although increases were not guaranteed, substantial increases had been negotiated in the past.

As an employee of Anheuser Busch, McGann was not allowed to calculate the present value of Husband's pension plan; but she stated such a calculation could be made by a private accountant. She also produced records from Anheuser Busch which showed, as of July 31, 1993, Husband's deferred income stock purchase account contained 620.1763 shares of Anheuser Busch common

stock and was valued at $32,008.97, subject to an outstanding loan balance of $15,229.64. His short-term fixed income fund contained $2,783.04 as of July 31, 1993.

Stephen Conway, a CPA and an attorney, testified as an expert for Wife. He examined Husband's pension plan and stated its present value was $65,278.29, based on an interest rate of 6%, and its present value is even less if an interest rate of 8% or 9% is used. Also, according to Conway's calculations, Wife would only receive $579.42 per month rather than $817 if Husband retired at age 55. Conway also stated the pension benefits received by Wife would be fully taxable and the rental property awarded to Wife would be subject to a capital gains tax if sold. However, if Husband waited to sell the marital home until after he turned 55, he could qualify for a $125,000 exemption to be applied to the net sale proceeds.

Dr. James P. Jennings, Husband's expert, calculated the present value of Wife's portion of the pension based on an interest rate of 5.8%, the current yield on long-term treasury securities. He stated, assuming Husband retired at age 55, the present value of the pension was $66,434.

Dr. Craig Voorhees, Son's psychologist, also testified at the hearing. He stated Son suffered from depression, post-traumatic stress syndrome, attention deficit disorder, oppositional defiant disorder, and a learning disability. He stated Son was very insecure as a result of these disorders and would be very depressed and withdrawn if he had to move out of the marital home or change schools. After hearing all the evidence, the trial court entered an order denying Wife's motion.

■ In Point I, Wife alleges the trial court erred in finding the separation agreement to be not unconscionable because Husband misled her and the trial court as to the value of his pension plan and 401K plan. This is a court-tried case. Therefore, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). As the trial

court made no specific findings of fact and none were requested, all facts are presumed to be found in accord with the judgment; and the judgment will be upheld under any reasonable theory presented and supported by the evidence. *J. and J. Home Builders, Inc. v. Dobas,* 839 S.W.2d 737, 738[1] (Mo.App. 1992).

■ Section 452.325 provides a separation agreement entered into by the parties is binding on the court, except as it relates to custody, support, and visitation, unless the court finds the terms of the separation agreement are unconscionable. RSMo, 1986. The Missouri Supreme Court has held this provision does not require the trial court to investigate the economic circumstances of the couple in order to determine the conscionability of a separation agreement. *Dow v. Dow,* 732 S.W.2d 906 (Mo. banc 1987). In *Arent v. Arent,* a case where a wife claimed the trial court erred in finding the property settlement agreement was not unconscionable, this court stated:

> Wife admits that there was an agreement as to the marital property, and it was presented to the court. Furthermore, wife was present at the dissolution hearing and her attorney questioned husband regarding the fairness of the agreement. Under these circumstances, she cannot now contend the agreement, which was incorporated into the decree, is unconscionable.

759 S.W.2d 855, 856[3] (Mo.App.1988), *citing Dow v. Dow,* 732 S.W.2d at 908.

■ In this case, Wife contends she entered into the separation agreement because Husband fraudulently misrepresented the value of his pension and the 401K plan. In *In re Marriage of Turner,* the court stated, "a separation agreement and a judgment distributing the marital property in accordance with that agreement could be set aside upon the basis of fraud in the procurement of that separation agreement." 803 S.W.2d 655, 658[3] (Mo.App.1991). However, Wife carries the burden of establishing the traditional elements of fraud which are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of the falsity, (5) his intent that the statement should be acted

upon by the other party in the manner contemplated, (6) that party's ignorance of the falsity, (7) reliance on the truth, (8) the right to rely thereon, and (9) injury. *Id.*

■ Wife failed to establish Husband made a representation which was false. A statement as to the value of property is ordinarily considered an "opinion," not a statement of fact, as required to establish fraud. *Hewlett v. Hewlett*, 845 S.W.2d 717, 720[6] (Mo.App.1993); *Alexander v. Sagehorn*, 600 S.W.2d 198, 210 (Mo.App.1980). Such a representation only amounts to fraud if the representing party has special knowledge as to the value; the other party is ignorant in respect to the value; and the representing party, knowing the other party is ignorant, makes a false representation as to value intending it to be relied on. *Id.*

■ No evidence was presented to show Husband had any special knowledge of the pension's value. In fact, Wife was provided with a booklet containing a summary of Husband's pension plan in January 1992. This is the same booklet the experts who testified at the motion hearing used to determine the present value of the pension. Since Wife had a copy of the pension plan summary prior to trial and could have had an independent evaluation done, she had no right to rely on any representations Husband made about the pension's value. Further, Husband made no representation about the present value of the pension at trial. In fact, he stated no present value analysis had been done. Rather, he gave his opinion about what the pension would be worth at the time he retired.

Wife also alleges Husband misstated the value of his 401K plan and concealed that the plan was subject to a loan. Wife alleges Husband's 401K plan was worth only $32,008, rather than $40,000 as Husband estimated and was subject to a loan for $15,229. However, the records Wife relies on state the plan's value as of July 1993, when it only contained 620.1763 shares of stock. There were 703 shares of stock in the plan when the separation agreement was entered into on June 22, 1993. The record on appeal does not reveal what happened to the additional stock. However, Husband admits he is liable to Wife for the value of 703 shares of stock,

and that he is solely responsible for the $15,229 loan against the 401K plan. Substantial evidence supports the trial court's denial of Wife's motion to set aside the agreement on the basis of fraud. *See, Turner*, 803 S.W.2d at 660[7]. Point denied.

■ In Point II, Wife alleges the trial court erred in denying her motion to set aside the decree and the separation agreement it incorporated because the separation agreement was based upon a mutual mistake that the value of Husband's pension was $150,000 rather than $66,000 and that the value of the 401K plan was $40,000. We disagree. First, to rescind an agreement because of a mutual mistake, the mistake must relate to a material fact which constituted the basis for the agreement. *Matter of Estate of Hysinger*, 785 S.W.2d 619, 624[1] (Mo.App.1990). As previously discussed, Husband only stated his *opinion* as to the value of the pension; he did not make a statement of fact upon which to base a claim of mutual mistake. *See, Hewlett*, 845 S.W.2d at 720[6]. Further, in order to have a mutual mistake, both parties must have done what neither intended to do. *Ludlow v. Ahrens*, 812 S.W.2d 245, 248[3] (Mo.App.1991). A mutual mistake presupposes the parties had a prior agreement which was not accurately recited or preserved in their written agreement. *Id.* Wife alleges, at the time the separation agreement was entered into, both she and Husband mistakenly believed the pension was worth $150,000. To show this belief was mistaken, she called an expert who testified the present value of the pension was only $65,000. However, there was no prior understanding as to the present value of the pension. In fact, at the dissolution hearing, Husband specifically stated no present valuation of the pension had been done.

Wife also alleges the separation agreement was entered into with a mistaken belief the 401K plan was worth $40,000. When the agreement was entered into, Husband's 401K plan contained 703 shares of stock. At trial, Husband estimated the 703 shares of stock were worth approximately $40,000. According to Anheuser Busch's records, the plan currently contains 620 shares of stock which

are valued at $32,008. Therefore, Husband's estimation that the 703 shares of stock would be worth $40,000 seems to be fairly accurate. Further, Husband admits Wife is entitled to the value of the 703 shares of stock although the 401K plan currently contains only 620 shares. Point denied.

In Point III, Wife alleges the trial court erred in denying her motion to set aside the decree because she did not freely and voluntarily agree to the terms of the separation agreement. Wife relies on her statements at the hearing that she was not happy with the terms of the settlement agreement and that she thought she and Son should be allowed to remain in the marital home.

■ Before Wife signed the agreement, she and Husband spent all day negotiating with the aid of their attorneys. Son's guardian ad litem was also present during the negotiation to represent his interests. Further, Husband and Wife had previously been divorced and had previously entered into a prenuptial agreement. Because of Wife's prior experience with property settlement negotiations, we may infer she was fully aware of her property rights and the effects of signing the separation agreement. *See, Stein v. Stein*, 789 S.W.2d 87, 97[26] (Mo. App.1990).

■ At the hearing on the motion to set aside, Wife argued she signed the agreement under duress because Husband had previously threatened to kill her if she did not agree to his terms. Wife offered no evidence of Husband's coercion other than her own testimony. Obviously, the trial court found Wife's testimony not to be credible. We will not substitute our judgment for that of the trial court on credibility issues. *Dukes v. Dukes*, 859 S.W.2d 264, 268[4] (Mo.App.1993). Point denied.

■ In Point IV, Wife alleges the trial court erred in denying her motion to set aside the decree because the separation agreement was not in the best interest of the parties' minor child. Wife relies on § 452.330(1), RSMo 1986, which states one of the factors the trial court should consider in dividing marital property is:

The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

However, this provision is inapplicable as the property was not divided by the trial court. The parties agreed on how the marital property would be divided in their separation agreement, and the trial court found the agreement was not unconscionable. The terms of a separation agreement relating to property division are binding on the court if found to be not unconscionable. *See,* § 452.325.2. Point denied.

Judgment affirmed.

CRANE, P.J., and CRANDALL, J., concur.