Pamela ARNOLD, Plaintiff/Appellant,

v.

James H. ERKMANN, d/b/a Executive Financial Services, and American General Securities, Inc., Defendants/Respondents.

No. 69416.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 26, 1996.

David G. Waltrip, Jones, Korum, Waltrip & Jones, Clayton, for appellant.

V. Scott Williams, Thompson Coburn, St. Charles, for James Erkmann.

Thomas Cummings, Douglas R. Sprong, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for Am. General Securities, Inc.

CRANE, Presiding Judge.

Plaintiff, Pamela Arnold, appeals from the trial court's judgment dismissing her five count action against defendant James Erkmann and defendant American General Securities, Inc., in which she sought damages and other relief arising out of her purchase of a Brangus cow, her calf, and her embryos from defendant Erkmann, and her later execution of a pooling agreement with Erkmann and others to pool the parties' Brangus heifers and embryos.

According to the petition and attached exhibits, Erkmann was an investment broker/dealer doing business as Executive Financial Services in St. Peters, Missouri, and was a registered agent with American Gen-

eral Securities, Inc. (American General) a brokerage firm registered with the National Association of Securities Dealers. Plaintiff contacted Erkmann in December, 1986 for investment advice.

In June, 1987 plaintiff and her husband, James Arnold [1], purchased Erkmann's Brangus cow (IS2), her natural calf, and her four embryos from Erkmann for $36,800.00, which sum she and James Arnold paid by check to Erkmann. On August 17, 1987 Erkmann asked plaintiff and James Arnold to reimburse him $6,000.00 for transfer fees he had been billed in connection with the four embryos. The petition does not allege that plaintiff and her husband paid the requested transfer fees.

On September 1, 1987 plaintiff, James Arnold, Erkmann, and Erkmann's brother, Christopher Erkmann, entered into an agreement denominated "Single H Brangus Herd Pooling Agreement". The agreement recited that the parties had entered into an agreement to purchase heifers and embryos produced by Riley Brangus Ranch cows and bulls. It further recited the parties intended to maintain their individual ownership pro rata of the Single H herd but intended to pool the calves of the herd in order to spread the risk of loss due to illness or death of the calves and the benefit of "superior produced calves." The agreement further provided that James Erkmann had a 33% interest in the herd, Christopher Erkmann had a 33% interest in the herd, and James Arnold and plaintiff together had a 33% interest in the herd. Plaintiff alleged that a check which she and James Arnold wrote to Erkmann on September 7, 1987 for $6,000.00 was consideration for the pooling agreement.

On June 1, 1988 Erkmann advised plaintiff and James Arnold that Single H sold one of IS2's embryos for $3,000.00 and IS2's calf for $1,500.00 as well as three other embryos for a total sale of $16,000.00, of which $5,500.00 would go to plaintiff and James Arnold. Erkmann gave plaintiff and James Arnold a promissory note for that amount, which he eventually paid.

Exhibits attached to the petition indicate that the cattle were maintained and bred by Riley Brangus Ranch and/or Riley Cattle Co. (hereinafter "Riley"). Riley provided monthly invoices to Single H showing charges incurred for maintenance fees on Single H cows and recipient cows and credits allowed when calves died. In September, 1989 Riley advised James Arnold that it was replacing IS2 with another cow (27P3/T) because of concerns about IS2's genetic background. Plaintiff alleges that from 1988 through 1990 other animals in the Single H herd were sold, died, or were slaughtered, but that she was never given complete information about their disposition or selling price and did not receive any proceeds from any disposition. She further alleged that Christopher Erkmann assigned his 33% interest to James Erkmann without notice or her consent and James Erkmann subsequently assigned his interest to Riley without her knowledge or consent.

Counts I, II, and III seek relief from Erkmann. In Count I of her petition plaintiff seeks damages for fraud arising out of her purchase from Erkmann of his Brangus cow IS2 and her subsequent execution of the pooling agreement with her husband, Erkmann, and Erkmann's brother. In Count II of her petition, she seeks damages for breach of fiduciary duty arising out of the same transactions. In Count III plaintiff seeks an accounting for breach of partnership duties alleged to have been created by the pooling agreement. In Counts IV and V plaintiff seeks damages for fraud and breach of fiduciary duty from American General arising out of Erkmann's cattle transactions with plaintiff. On appeal plaintiff challenges the trial court's dismissal of each of her five counts for failure to state a claim.

We affirm the judgment dismissing Counts I, II, IV and V for failure to state a claim. We find Count III states a claim for an accounting and reverse the judgment dismissing Count III and remand.

On review of a trial court's order dismissing a claim for failure to state a claim upon which relief can be granted, we accept all properly pleaded facts as true, we give the

---

1. James Arnold was never a party to this action.

pleadings their broadest intendment, and we construe all allegations favorably to the pleader. *Baugher v. Gates Rubber Co., Inc.,* 863 S.W.2d 905, 907 (Mo.App.1993). We consider any attached exhibits as part of the petition for all purposes. *Id.;* Rule 55.12.

A petition must contain a short and plain statement of the facts showing that the pleader is entitled to relief. Rule 55.05. Facts must be alleged to support each essential element of the cause to be pleaded. *Berkowski v. St. Louis County,* 854 S.W.2d 819, 823 (Mo.App.1993). However, we do not accept the pleader's conclusions. *Id.* Where the petition contains only conclusions and does not contain the ultimate facts nor any allegations from which to infer those facts, a motion to dismiss is properly granted. *Id.; ITT Commercial Finance Corp. v. Mid–Am. Marine,* 854 S.W.2d 371, 379 (Mo. banc 1993).

*CLAIMS AGAINST JAMES ERKMANN*
*Count I*

For her first point plaintiff asserts that the trial court erred in dismissing Count I against Erkmann because she alleged all of the elements of a claim of fraud. Erkmann responds that plaintiff failed to allege a misrepresentation of existing fact on which she had the right to rely which was false when made.

To state a claim for fraudulent misrepresentation, a plaintiff must plead facts which support each of the following elements:

(1) a false, material representation;

(2) the speaker's knowledge of its falsity or his ignorance of its truth;

(3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated;

(4) the hearer's ignorance of the falsity of the representation;

(5) the hearer's reliance on its truth;

(6) the hearer's right to rely thereon; and

(7) the hearer's consequent and proximately caused injury.

*State ex rel. PaineWebber v. Voorhees,* 891 S.W.2d 126, 128 (Mo. banc 1995); *Stavrides v. Zerjav,* 848 S.W.2d 523, 528 (Mo.App.

1993). The rules governing the pleading of fraud are more precise than those which generally govern pleading a claim for relief. *Miller v. Ford Motor Co.,* 732 S.W.2d 564, 565 (Mo.App.1987). The circumstances of each element of fraud must be stated with particularity. *Id.; PaineWebber,* 891 S.W.2d at 128; Rule 55.15. The fraud must clearly appear from the allegations of fact and be independent of conclusions. *Miller,* 732 S.W.2d at 565. Failure to properly plead any essential element of fraud is fatally defective and renders the petition subject to dismissal. *Id.; Mullen v. G.M.A.C.,* 919 S.W.2d 7, 8 (Mo.App.1996).

In her brief plaintiff sets out thirteen of the forty-six allegations constituting Count I and argues that these allegations sufficiently allege the elements of fraud in connection with her purchase of the cow IS2 for $36,800.00 and her execution of the pooling agreement for $6,000.00. We will consider the allegations with respect to each of these transactions.

a. *Cattle Purchase*

Plaintiff alleges the following representations were made with respect to the cow IS2:

32. Although the Brangus cattle market collapsed in 1986, as the result of a change in the tax laws, Defendant Erkmann represented to Plaintiff in 1987 that the Brangus cattle industry was lucrative and their investment therein was safe with adequate security and that they could expect substantial returns to commence within six (6) weeks after the purchase of IS2 on June 13, 1987, and thereafter, on a regular basis.

33. Defendant Erkmann further represented IS2 was highly valuable and of great breeding potential, and its market value was therefore $36,800.00.

The prediction of future success and profitability contained in paragraph 32 is not a misrepresentation of past or existing fact and cannot be the subject of a fraud action. To constitute fraud, the alleged misrepresentation must relate to a past or existing fact. *Titan Const. Co. v. Mark Twain Kansas City Bank,* 887 S.W.2d 454, 459 (Mo.

App.1994). Statements and representations as to expectations and predictions for the future are insufficient to authorize a recovery for fraudulent misrepresentation. *Arnott v. Kruse,* 730 S.W.2d 597, 600 (Mo.App.1987). In particular, predictions and projections regarding the future profitability of a business or investment cannot form a basis for fraud as a matter of law. *Trotter's Corp. v. Ringleader Restaurants,* 929 S.W.2d 935, 940 (Mo. App.1996).

■ The representations that the Brangus cattle industry was lucrative and that the cow IS2 was highly valuable and of great breeding potential are non-actionable, non-specific opinions and commendatory trade talk. Puffing and sales propaganda are ordinarily not representations which can be the basis for a cause of action for deceit. *Wofford v. Kennedy's 2nd Street Co.,* 649 S.W.2d 912, 915 (Mo.App.1983). Such expressions are expressions of opinion which "are common, are permitted, and should be expected." *Clark v. Olson,* 726 S.W.2d 718, 720 (Mo. banc 1987). Expressions of opinion are insufficient to authorize a recovery for fraudulent misrepresentation because such expressions are deemed not to be material to the transaction. *Id.* It is a matter of common experience that a seller of property will look with favor upon his own property and will be motivated by a desire for gain. *Orlann v. Laederich,* 338 Mo. 783, 92 S.W.2d 190, 196 (1936).

■ The representation that IS2's market value was $36,800.00 is a representation of value and not a false statement of existing fact. A statement as to the value of property is ordinarily considered an opinion, not a statement of fact. *Mitchell v. Mitchell,* 888 S.W.2d 393, 397 (Mo.App.1994). Where the representations alleged are only statements of opinion, the petition should be dismissed for failure to state a claim. *Clark,* 726 S.W.2d at 720.

■ A representation of opinion only amounts to fraud if the representing party has, or holds himself out to have, special knowledge as to the value; and the representing party, knowing the other party is ignorant, makes a false representation as to

value intending it to be relied on. *Mitchell,* 888 S.W.2d at 397; *Shepherd v. Woodson,* 328 S.W.2d 1, 6 (Mo.1959) (quoting 3 Pomeroy's Equity Jurisprudence, 5th Ed., p. 454, § 878b). The same rule applies to other representations of opinion, such as future projections. *Dawes v. Elliston,* 369 S.W.2d 285, 287 (Mo.App.1963).

■ Plaintiff argues that she pleads facts falling within this exception because she pleads that Erkmann was "an investment broker/dealer" and that she reasonably relied on his "expertise as a broker/dealer." The petition does allege that Erkmann was an investment broker/dealer experienced in the sale of securities. However, in the cattle transaction at issue Erkmann sold his own personal property. Plaintiff does not allege any facts to support her assumption that the cow was a "security." Plaintiff does not allege that Erkmann had, or held himself out to have, any expertise or special knowledge with respect to the breeding, raising, buying, selling, or valuation of Brangus cattle, the subject matter of the representation and transactions. Thus, plaintiff fails to allege facts showing that Erkmann had special knowledge which would make his statements of opinion actionable.

■ Moreover, even if the representation as to IS2's value is considered to be fact, Count I fails to allege particular facts supporting the allegation that the representation as to IS2's value was false, which is also required. *See City of Fenton v. Executive Intern. Inn,* 740 S.W.2d 338, 339 (Mo.App. 1987).

Plaintiff pleaded the falsity of IS2's value as follows:

35. Defendant Erkmann's representations were false in that the Brangus cattle market was not lucrative, but rather had collapsed in 1986 as a result of a new tax law which flattened the tax shelters. . . .

37. Defendant Erkmann originally represented to Plaintiff that cow IS2 was worth $36,800.00 in 1987, however, in Defendant Erkmann had purchased IS2 for only $9,100.00 in 1985, prior to the 1986 collapse of the Brangus cattle market.

The only facts pleaded to support an inference that the representation as to IS2's market value was false were 1) the fact that Erkmann purchased IS2 in 1985 for $9,100.00 and 2) the fact that the Brangus cattle market collapsed in 1986 as a result of tax law changes.

These allegations do not support a reasonable inference that IS2's market value was not $36,800.00 in 1985. The sale of IS2 for $9,100.00 in 1987 would not be evidence of IS2's market value in 1987 because 1) two years passed between the two transactions and 2) IS2's condition changed between the two transactions. As alleged in paragraph 8, the $36,800.00 paid for IS2 in 1987 covered not only IS2, but also her calf and four embryos. Further, the petition and attached exhibits indicate that IS2 was a breeding cow and that IS2 had exhibited her fertility and breeding capability between 1985 and 1987 by producing seven safe embryos, six of which sold for $12,000.00. Likewise, the allegation that the Brangus cattle market collapsed in 1986 because of tax shelter law changes does not reasonably lead to the conclusion that IS2's value as a breeding cow could not be $36,800.00 in 1987. The "collapse" of a cattle market in one year due to tax law changes does not mean that an individual cow has less value in a subsequent year. The facts pleaded are insufficient to support an allegation of falsity.

For all of the above reasons, plaintiff failed to plead with particularity facts supporting the required elements of fraud in connection with the sale of IS2, her calf, and her four embryos.

### b. *Pooling Agreement*

■ Plaintiff alleges the following representation with respect to the pooling agreement:

34. Although Plaintiff explicitly stated her concerns to Defendant Erkmann that her investment be protected by purchasing an insurance policy, Defendant Erkmann represented and insisted the best protection would be for her to execute the "pooling agreement" thereby "diversifying", and contribute an additional $6,000.00 as consideration.

The statement that a pooling agreement would best protect plaintiff's cattle purchase is clearly an opinion because it is an expression of Erkmann's judgment. *See* Restatement, Torts 2d § 538A. It is thus not actionable. Plaintiff does not allege that Erkmann had any superior knowledge or expertise in cattle insurance or cattle pooling and does not allege any factual basis to support the falsity of this advice. Accordingly, Count I does not plead a cause of action for fraud based on her execution of the pooling agreement.

The trial court did not err in dismissing Count I for failure to state a claim. Point one is denied.

### Count II

■ For her second point plaintiff contends that the trial court erred in dismissing Count II, in which she seeks damages against Erkmann for breach of fiduciary duty in selling his cow to her and entering into the pooling agreement with her. She asserts that the following allegations establish that Erkmann had a fiduciary duty to her which he breached:

6. During December, 1986, Plaintiff contacted Defendant James H. Erkmann, d/b/a Executive Financial Services, for the purpose of obtaining investment advice regarding good and safe investments with adequate security.

\* \* \* \* \* \*

48. After Defendant Erkmann *gained the confidence and trust of Plaintiff,* who was inexperienced in buying and selling securities, and during the time stated herein while Plaintiff and Defendant Erkmann occupied a confidential relationship, Plaintiff entrusted to Defendant Erkmann sums of money, which Defendant Erkmann promised to invest for Plaintiff in good and safe investments with adequate security; Defendant Erkmann owed Plaintiff the fiduciary duty to so invest her money.

49. Defendant Erkmann advised, induced and prevailed upon Plaintiff to purchase his own cow (IS2) for $36,800.00.

50. From June through September, 1987, Defendant further advised, induced and

prevailed upon Plaintiff to invest sums totaling $42,800.00 towards the purchase of Brangus cattle.

51. Defendant Erkmann advised, induced and prevailed upon Plaintiff to enter into a pooling agreement with him whereby Plaintiff would receive profits from the sale of embryos and/or cattle comprising the herd.

52. When sales occurred or cattle were slaughtered, Plaintiff told Defendant Erkmann she expected to receive her share of the sale price or slaughter price, which request Defendant Erkmann refused to honor, stating he did not have the cash.

53. Pursuant to a Promissory Note (Exhibit F) Defendant Erkmann paid to Plaintiff $5,500.00, representing Plaintiff's share of one sale. No other money was received by Plaintiff thereafter, even though other sales had, in fact, occurred, and some cattle were slaughtered.

54. Defendant Erkmann promised Plaintiff he would return to Plaintiff the funds originally invested, but failed to do so, and has not so [sic] to date despite the fact that Plaintiff had repeatedly requested said funds be returned to her.

55. At diverse times prior to said investment by Plaintiff of sums totaling $42,-800.00, Defendant Erkmann solicited from Plaintiff said sums by promising to protect her interest therein and look after said investments so that Plaintiff would not have to be concerned with her financial security, and Plaintiff believed, trusted and relied on these promises by Defendant Erkmann.

56. The cattle sold to Plaintiff by Defendant Erkmann ... were all worth far less than the sum of money entrusted to Defendant Erkmann by Plaintiff....

57. Defendant Erkmann had a duty, *while thus controlling and managing said investments of Plaintiff* to invest said sums honestly, prudently and diligently, but said Defendant, while acting in said fiduciary capacity, was guilty of gross negligence and misconduct, and knowingly and willfully, for his own individual gain, and to the detriment of Plaintiff, abused the trust confided in him....

(Emphasis added by plaintiff).

■ Plaintiff relies on the rule that "[a] confidential relationship exists when one person relies upon and trusts the other with the management of his property and attendance to his business affairs, thereby creating some degree of fiduciary obligation." *Paletta v. Mercantile Bank, N.A.*, 889 S.W.2d 58, 61 (Mo.App.1994) (quoting *Estate of Brown v. Fulp*, 718 S.W.2d 588, 595 (Mo.App.1986)). One of the key elements of a fiduciary relationship in this context is the fiduciary's control of the supervised party's property. "[T]hings of value such as land, monies, a business, or other things of value must be possessed or managed by the dominant party." *Emerick v. Mutual Benefit Life Insurance Co.*, 756 S.W.2d 513, 526 (Mo. banc 1988); *Shapiro v. Butterfield*, 921 S.W.2d 649, 651 (Mo.App.1996).

■ Count II does not allege this transfer of control or management with respect to the sale of the cow or the execution of the pooling agreement. Although paragraphs 6 and 48 allege that plaintiff entrusted Erkmann with sums of money to invest for her, the petition does not allege that Erkmann used entrusted sums to purchase the cow or enter into the pooling agreement. To the contrary, the petition and attached exhibits make clear that plaintiff and James Arnold made their own decisions to buy the cow and to execute into the pooling agreement and paid Erkmann with a separate check for each transaction. A buyer who pays the purchase price to a seller for a specific item or contract right is not "entrusting" the seller with sums of money for "investment" so as to create a fiduciary relationship.

■ There are two other reasons why this count does not state a claim for breach of fiduciary duty. First, although plaintiff alleges that Erkmann gained her confidence and trust and that she was inexperienced in buying securities, she does not allege such incapacity on her part or such undue influence on Erkmann's part that she was prevented from investigating the Brangus cattle market, ascertaining IS2's market value, or

making her own decision to purchase cattle or to enter the pooling agreement. *See, Farmers Insurance Co., Inc. v. McCarthy,* 871 S.W.2d 82, 86–87 (Mo.App. E.D.1994). A "[f]iduciary duty is not created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary." *Id.* at 87. No such conduct is alleged.

 Secondly, plaintiff does not allege that in these transactions Erkmann was acting for or undertook to act for plaintiff's primary benefit. A fiduciary is one who has a duty created by his own undertaking to act primarily for another's benefit in matters connected with such an undertaking. *Id.* To the contrary, plaintiff alleged she purchased Erkmann's own cow and the pooling agreement recited that the parties pooled their own calves. That Erkmann had undertaken to act primarily for plaintiff's benefit in selling and pooling his own property cannot reasonably be inferred.

The remaining allegations deal with promises made or actions taken after the pooling agreement was entered into. These do not support a cause of action for breach of fiduciary duty in entering into these transactions.

The trial court did not err in dismissing Count II. Point two is denied.

*Count III*

 In her third point defendant asserts the trial court erred in dismissing Count III because she alleged sufficient facts to state a claim for breach of partnership. She argues that the "Single H Brangus Pooling Agreement", attached to her petition constituted a partnership agreement and it was breached when Erkmann's brother assigned his interest to Erkmann without plaintiff's knowledge or consent, when Erkmann assigned his interest to Riley without plaintiff's knowledge or consent, and when Erkmann allowed Riley to sell or slaughter the pooled cattle without giving her any return or profits. Erkmann argues that the claim was properly dismissed because the pooling agreement expressly disclaimed the creation of a partnership and plaintiff did not allege actual damages. We find that the petition sufficiently alleged the

existence of a partnership and a right to an accounting.

 A partnership is "an association of two or more persons to carry on as coowners a business for profit." § 358.060.01 RSMo 1994. A partnership agreement may be oral or written, express or implied from the parties' acts or conduct. *Bernard McMenamy Contractor, Inc. v. Kitchen,* 692 S.W.2d 817, 820 (Mo.App. E.D.1985). The primary criterion is the parties' intention to enter a relationship which in law constitutes a partnership; intent to form a partnership is not necessary. *Id.* Indicia of a partnership relationship includes a right to a voice in management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors. *Id.* at 821.

 Count III alleges and incorporates the pooling agreement. The pooling agreement contains language providing for the splitting of profits, allocation of risk, and joint participation in business decisions and obligations over $5,000.00. Erkmann points out that the agreement specifically disclaims that it creates a partnership in the following language:

> Nothing in this Agreement is intended to nor shall it in fact operate to create an agency, partnership or corporation. . . .

However, such a recitation is not dispositive of the determination of the existence of a partnership if an intent to enter into a partnership can be found in other provisions of the agreement. *Id.* at 820. Count III sufficiently alleges the existence of a partnership to withstand a motion to dismiss.

 Erkmann next argues that Count III does not allege actual damage. No actual damages are alleged or sought, however Count III sufficiently alleges a claim for an accounting, which is part of the relief sought. An individual partner has the right to an accounting for profits derived by another partner from partnership operations without the consent of the other partners. §§ 358.220; 338.210.1. RSMo 1994. To bring an action under this theory, a plaintiff must plead the existence of a partnership and the withholding of profits. Plaintiff alleges that calves or embryos subject to the agreement were purchased, transferred, sold, or dis-

posed of without a distribution of the profits and that Erkmann, by taking assignment of his brother's interest and assigning his own interest, diverted investment opportunities from plaintiff. These allegations sufficiently allege the withholding of profits to state a claim for an accounting. The trial court erred in dismissing Count III.

### CLAIMS AGAINST AMERICAN GENERAL SECURITIES, INC.

For her fourth point plaintiff contends the trial court erred in dismissing Counts IV and V against American General because these counts state causes of action for fraud and breach of fiduciary duty. In Count IV plaintiff incorporates Count I and seeks damages against American General for Erkmann's fraud in advising plaintiff to invest in Brangus cattle. In Count V plaintiff incorporates the allegations contained in Count II and seeks damages for Erkmann's breach of fiduciary duty in connection with his execution of the pooling agreement with plaintiff.

A principal is held liable to a third person for a tort, even though not expressly authorized by the principal, if the agent committed such act while engaged in an activity falling within the scope of his authority. *Maryland Cas. Co. v. Huger*, 728 S.W.2d 574, 579 (Mo.App.1987). Because the petition fails to state a tort claim in Counts I and II it fails to state a claim in Counts IV and V. No agent's tort is alleged for which the principal could be liable. Where the right to recover is dependent entirely on the doctrine of respondeat superior, there can be no judgment against the principal if the agent is found not to have committed a tort. *Moran v. North County Neurosurgery, Inc.*, 714 S.W.2d 231, 232–33 (Mo.App.1986).

The judgment of the trial court is reversed and remanded as to the claim for an accounting in Count III and is affirmed as to Counts I, II, IV, and V.

GERALD M. SMITH and PUDLOWSKI, JJ., concur.