In re Eulus FORREST, Patsy J. Forrest, Debtors.

Kevin CHECKETT, Trustee, Plaintiff,

v.

Eunice STEFFENS, Lyman Goad, Gwen Goad and Roy E. Dunn, Defendants.

Bankruptcy No. 91–30278.
Adv. No. 92–3027.

United States Bankruptcy Court,
W.D. Missouri.

Oct. 2, 1992.

Kevin Checkett, Checkett & Pauly, Carthage, Mo., for plaintiff.

David Vandagriff, Monett, Mo., for defendants.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This is a suit for turnover (11 U.S.C. 542) and declaratory relief. This Court has jurisdiction based on 28 U.S.C. § 1334 and 152(b). This is a core proceeding. 28 U.S.C. § 157(b)(2)(E). For the reasons to be stated, I find in favor of the defendants.

Debtor Patsy J. Forrest was formerly married to defendant Roy E. Dunn. Defendant Lyman Goad is a step-brother, and defendant Eunice Steffens is a step-sister, of Roy Dunn. In November 1986 Patsy Forrest and the defendants acquired Big M Boat Dock in Barry County, Missouri. Big M's assets consist of floating docks, boats, motors and inventory located on real property fronting Table Rock Lake. The real property is leased from the Army Corps of Engineers. After the purchase, the Corps of Engineers entered into a lease for the property with Patsy Forrest, the defendants, and Big M Boat Dock. On February 6, 1987 a Missouri corporation, named Big M Boat Dock and Marina, Inc. was formed. A draft of First Minutes of Shareholders and Directors Meetings was prepared, but never signed. No stock in the corporation was ever issued. The corporate charter was forfeited on July 23, 1990.

Each of the three families involved in the enterprise made initial capital contributions of $30,000. In addition, such investors executed a note in favor of Boatmen's National Bank of Cassville, secured by a lien on the boat dock and related assets.

Initially Patsy Forrest, then named Dunn, ran the boat dock on a daily basis. Mr. and Mrs. Goad, who reside in California, were passive investors. Ms. Steffens, who lives in Illinois, performed accounting services for the business, and came approximately three times per year to help out during the busiest weekends. The business showed a net loss of $30,617 in 1988, a net loss of $25,107 in 1989, a net loss of $46,274 in 1990, and a net income of $1,706 in 1991.

In August 1989 Roy Dunn and Patsy Forrest separated. On February 1, 1990, an Oklahoma state court entered a decree of divorce terminating their marriage. By Order entered July 23, 1990, the Oklahoma court awarded Patsy Forrest a judgment against Mr. Dunn for alimony in lieu of property division in the amount of $188,333, which sum was reduced to judgment and "impressed as a lien against the parties' share of the property owned by Big M Boat Dock and Marina, Inc.". No steps were ever taken to register such judgment in the State of Missouri, or to levy on any property of the Big M Boat Dock. On August 15, 1990, Roy Dunn transferred to Lyman Goad all interest held by him in Big M Boat Dock. Such transfer was effectuated by a letter signed and mailed to Mr. Goad. Mr. Dunn had previously advised the Goads that the Oklahoma court had awarded him any interest held with his ex-wife in the marina. He did not tell the Goads that his ex-wife had been given a lien on such interest. Thereafter Mr. Dunn filed a Chapter 7 bankruptcy proceeding in Oklahoma. Debtor Forrest has not taken any steps to collect the obligation due her, and Mr. Dunn apparently did not ask the Oklahoma bankruptcy court to discharge

his obligation to her. 11 U.S.C. § 523(a)(5); Fed.R.Bankr.P. 4007(b); 3 Lawrence P. King, et al., *Collier on Bankruptcy,* ¶ 523.-15[6], 523—125–127 (15th ed. 1992).

As indicated, debtor Patsy Forrest originally ran the boat dock on a day-to-day basis. In August 1989 she was removed as the daily operator by the other partners. In March 1990, Gwen Goad came to Missouri and began running the boat dock herself. Since then she has divided her time between California and Missouri. At the time Mrs. Goad came to Missouri, the loan to Boatmen's was in default, and the bank was threatening to commence replevin proceedings with respect to its collateral. In addition, the condition of the boat dock had deteriorated, and the facilities were in need of extensive repairs. Also, given the condition of the property, the Corps of Engineers had expressed concerns as to whether its lease, due to expire December 31, 1992, would be renewed.

According to Mrs. Goad, Roy Dunn advised her that he transferred his interest in the business to Mr. Goad because additional capital contributions were necessary to keep the business going, and he had no funds to contribute. After such interest was transferred, the Goads, and Ms. Steffens, made substantial capital contributions. Ms. Steffens paid $10,000 to Boatmen's pursuant to an agreement under which that bank briefly refrained from exercising rights available to it due to the loan default. Thereafter, the Goads took out a mortgage on their residence in California, and used the proceeds to pay off in full the obligation due Boatmen's, in the amount of approximately $90,000. In addition, Ms. Steffens has contributed approximately $18,000 since the loan was paid off, which funds were used to pay ongoing operating expenses. In order to make the repairs necessary to satisfy the Army Corps of Engineers, so that a new lease can be entered into, it is also expected that the Goads and Ms. Steffens will need to contribute approximately $40,000 more to the property immediately. Other than their original capital contribution of $30,-000, and the labor provided, neither Patsy Forrest nor Roy Dunn has made any capital contributions to the business.

This matter was tried on September 11, 1992, in Joplin, Missouri, as to all defendants except Roy Dunn. Mr. Dunn has neither answered the Complaint, nor appeared at any court proceedings involving the matter. Since he filed a Chapter 7 proceeding, and claims no interest in the Big M Boat Dock or its assets, the trustee's case against Mr. Dunn will be dismissed without prejudice. Nothing in this opinion or in the dismissal of Mr. Dunn prevents the debtor or the trustee from exercising any rights they might have against Mr. Dunn.

The issue as to the remaining defendants is whether Patsy Forrest, and therefore her bankruptcy trustee, hold a valid lien on the interest of Roy Dunn, which was transferred to Lyman Goad. The divorce decree and judgment, obtained in Oklahoma, would be enforceable in Missouri, under the Uniform Enforcement of Foreign Judgments Act[1] if debtor had taken the steps necessary to perfect her lien in Missouri.

Preliminarily, it should be noted that there is some question as to the nature of the property that debtor claims is encumbered by her lien. The type of property involved determines the steps necessary to perfect a judgment lien against such property. Mr. Dunn's interest was originally intended to be in a corporation. However, as shown, no stock was ever issued in such corporation. In Missouri, if two or more persons carry on a business for profit as co-owners, and are not a corporation,

---

1. That Act is applied by Missouri Rule of Civil Procedure 74.14, which reads as follows:

(b) **Filing and Status of Foreign Judgements.** A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state *may be filed* in the office of the clerk of any circuit court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court of this state. A judgment *so filed* has the same effect and is subject for reopening, vacating, or staying as a judgment of a circuit court of this state and may be enforced or satisfied in like manner. (Emphasis added.) Mo.R.Civ.Pro. 74.14 (1992).

they are treated as a partnership. Mo.Rev. Stat. § 358.060 (1986). Since the parties operated a joint venture which was not a corporation, I find that they should be treated as partners in a partnership under Missouri law.[2]

I also find that Mr. Dunn validly transferred his interest in the marina to Mr. Goad on or about August 15, 1990. In Missouri, partners are allowed to transfer or assign their interest to outsiders. Mo. Rev.Stat. § 358.270. Dealings between partners need not follow any particular format, and need not even be in writing. *Kielhafner v. Kielhafner,* 639 S.W.2d 288, 289 (Mo.Ct.App.1982). Here, Mr. Dunn did transfer his interest in writing. And the other partners, in reliance on that transfer, and without knowledge of the lien claimed by Patsy Forrest, invested additional sums in the business.

I further find that debtor did not take any steps to impress her lien on Mr. Dunn's interest prior to its transfer to Mr. Goad on August 15, 1990. Mo.Rev.Stat. § 358.260 (interest in partnership is personal property); Mo.R.Civ.Proc. 76.07 (1992) (levy creates a lien on personal property). The same would be true if the marina were a valid corporate entity. Mo.R.Civ.Proc. 76.-06(f) (possession of stock certificate or notice of levy to issuer creates lien on stock).

Since Patsy Forrest failed to take the steps necessary to place a judgment lien on Mr. Dunn's interest, Mr. Goad took that interest free of such lien.

The trustee, however, urges the court to find the existence of an equitable lien on the interest previously held by Mr. Dunn. The trustee cites a Tenth Circuit case, *In re Donahue,* 862 F.2d 259 (10th Cir.1988), for the proposition that the court can use its equitable powers to find the existence of a lien that does not arise by law. *Donahue* also deals with a divorce

decree which awarded the Chapter 7 debtor's former spouse a money judgment and awarded the debtor property subject to the money judgment. The property was located in a county other than the county where the judgment was obtained and the non-debtor spouse did not attempt to file her judgment in the county where the property was located. The debtor then filed for bankruptcy and attempted to have the debt declared dischargeable. *Id.* at 260. The court stated that, "[a]n equitable lien is a creature of equity, is based on the equitable doctrine of unjust enrichment, and is the right to have a fund or a specific property applied to the payment of a particular debt." The court went on to say that "[a]n equitable lien may also be created by a judicial decree." *Id. Donahue* is distinguishable from the case at hand, however, in that the court found an equitable lien on the real property of the debtor prior to the transfer of the property to a third party. There is no question in *Donahue* that the debtor had knowledge of the judgment and that he declared bankruptcy when his ex-spouse sought an order in State Court to allow foreclosure or execution on the judgment. *Id.* at 261. I would agree with *Donahue's* conclusion that "permitting [the debtor] to avoid [the] lien or otherwise discharge his debt to her would unjustly enrich Donahue, as it would enable him to retain the one substantial asset of their marriage, while depriving Parker of her share of that asset."

Here, however, the remaining defendants have not been unjustly enriched. As shown, the Dunns, the Goads and Ms. Steffens each purchased a one-third interest in the entity for $30,000 in November 1986. Neither Roy E. Dunn nor debtor has made any further capital contributions to the Big M Boat Dock and Marina. On the other hand, Mr. and Mrs. Goad have paid off the $90,000 obligation to Boatman's Bank. Ms.

2. "The rights of joint adventurers are governed by rules applicable to partnerships." *Stram v. Miller,* 663 S.W.2d 269, 277 (Mo.Ct.App.1983); *Kielhafner v. Kielhafner,* 639 S.W.2d 288 (Mo.Ct.App.1982) (the partnership agreement need not be written but may be expressed orally or implied from acts and conduct of the parties, with the intent of the parties serving as primary criterion for determining whether such a relationship exists); *Gonseth v. K & K Oil Co.,* 439 S.W.2d 18 (Mo.Ct.App.1969) (a partnership may not disguise itself as a corporation and any agreement purporting to do so is, generally speaking, void).

Steffens has contributed $18,000 to pay ongoing expenses. Both owners anticipate contributing another $40,000 to satisfy the Army Corps of Engineers. These additional contributions have more than made up for the capital originally contributed by Mr. Dunn and Ms. Forrest. No appraisal was offered at trial, and there is insufficient evidence to show that the property has a value in excess of the contributions made by the remaining defendants. I find that debtor's failure to properly perfect her judgment lien in Missouri did not unjustly enrich the remaining defendants. Therefore, there are no circumstances present here permitting the imposition of an equitable lien.

Based upon the above and foregoing, I find that Roy Dunn transferred his interest in the marina to defendants Eunice Steffens, Lyman Goad, and Gwen Goad free and clear of any judgment lien of Patsy Forrest, that no sufficient basis for imposition of an equitable lien has been shown, and that the trustee's suit for turnover should therefore be denied.

An order consistent with this Memorandum Opinion will be entered this date.