874 F.Supp. 971 (1995)
AMERICAN NATIONAL INSURANCE COMPANY, Plaintiff,
v.
GILROY, SIMS & ASSOCIATES, LTD., et al., Defendants.
Nos. 91-1012C(6), 91-2104C(6).
United States District Court, E.D. Missouri, Eastern Division.
February 9, 1995.
*972 Byron E. Francis, Katherine D. Knocke, Associate, Petree Anne Eastman, Daniel R. Wofsey, Armstrong and Teasdale, St. Louis, MO, for American Nat. Ins. Co.
J. William Newbold, III, Coburn and Croft, St. Louis, MO, for Gilroy-Sims & Associates, Ltd.
J. William Newbold, III, Coburn and Croft, Steven M. Hamburg, Summers and Compton, St. Louis, MO, for Richard D. Gilroy.
J. William Newbold, III, Coburn and Croft, Elizabeth C. Anderson, Alan B. Hoffman, Husch and Eppenberger St. Louis, MO, for Estate of William H. Sims.
J. William Newbold, III, Dudley Von Holt, Coburn and Croft, St. Louis, MO, for Michael E. Sims.
Eric T. Tolen, Asst. U.S. Atty., St. Louis, MO, for the U.S.
J. William Newbold, III, Dudley Von Holt, Coburn and Croft, Elizabeth C. Anderson, Alan B. Hoffman, Husch and Eppenberger, St. Louis, MO, for John T. Murphy, Jr.
Elizabeth C. Anderson, Alan B. Hoffman, Husch and Eppenberger, St. Louis, MO, for Thomas R. Green.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on the motions for summary judgment. This action is a consolidation of American National Insurance Company v. Gilroy, Sims & Assoc., Ltd., No. 91-1012C(6) and United States v. American National Insurance Company, No. 91-2104C(6).
On May 14, 1991, plaintiff, American National Insurance Company (American National), filed a two count complaint against the United States and numerous other defendants.[1] Count I of plaintiff's complaint which is directed against all named defendants seeks declaratory judgment. Count II is a claim for deficiency judgment and is directed against certain named defendants, not the United States. American National repeats and reasserts these same allegations in its counter claim and cross claim directed against each defendant to this action.
*973 On October 15, 1991, the United States of America filed a complaint for interpleader against American National, as well as those defendants named in plaintiff's first amended complaint. This matter was thereafter consolidated with the action brought by American National. Pursuant to Title 28 U.S.C. §§ 1335, 1345, 2361 and Rule 22 of the Federal Rules of Civil Procedure, the United States sought to interplead certain personal property, the judgment fund in the amount of $283,110.72 arising out of the consolidated appeals before the General Service Administration Board of Contract Appeals (GSABCA).
With respect to Count I, American National moves this Court to enter declaratory judgment asserting that it is entitled to the entire judgment fund arising out of consolidated appeals before the GSABCA.[2] The United States filed a motion for summary judgment and memorandum in support seeking to interplead the judgment fund in the registry of the Court on May 19, 1993. On September 30, 1993, the Court entered an order granting the United States' unopposed motion for summary judgment and dismissing plaintiff's claims against the United States. The order directed the United States, through its agency, General Services Administration (GSA), to transfer to the Clerk of this Court the sum of $283,110.72 plus all accrued interest to be held until further order of this Court.[3]
American National also moves for summary judgment on Count II contending that defendants are liable for the deficiency of $1,437,840.00 after the alleged default by Gilroy, Sims & Associates (Gilroy, Sims) under the promissory note and the foreclosure of the property located at 210 North 12th Street.
Defendants Thomas R. Green and John T. Murphy move for summary judgment as to liability on Count II of American National's first amended complaint and second amended counter claim and cross claim. Green and Murphy contend that they were limited partners in Gilroy, Sims and, hence, are not responsible for the deficiency. This count alleges that American National is entitled to a deficiency judgment of approximately $1,400,000.00 following an alleged default by Gilroy, Sims under the terms of a promissory note, foreclosure and sale of the real property securing the subject note pursuant to a deed of trust and security agreement executed by Gilroy, Sims. Defendants contend that as limited partners who did not sign the documents associated with the promissory note they cannot be liable. American National responds that Green and Murphy are liable under the terms of the Restated Agreement.
Defendant Michael E. Sims, trustee under Sims' trust agreement dated January 15, 1982, moves for summary judgment with respect to American National's claim for a deficiency judgment in Count II of its first amended complaint and Count II of its second amended counter claim and cross claim. Michael Sims contends that he is not liable as a general partner of Gilroy, Sims & Associates and that the January 15, 1982 assignment of Sims' partnership interest to the trust did not transfer partnership liabilities to the trust or to him as trustee.
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); First Sec. Sav. v. Kansas Bankers Sur. Co., 849 F.2d 345, 349 (8th Cir.1988). In passing on a motion for summary judgment, a court is required to view the facts and inferences that *974 reasonably may be derived therefrom in the light most favorable to the non-moving party. Holloway v. Lockhart, 813 F.2d 874, 876 (8th Cir.1987). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 392 (8th Cir.1986). As the Supreme Court has stated:
The inquiry performed is the threshold inquiry of determining whether there is the need for a trial  whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
The undisputed facts set forth in the exhibits attached to the motions for summary judgment establish that William Sims and Richard Gilroy entered into negotiations with the General Services Administration (GSA) for the construction of an office building on property located at 210 North 12th Street and the lease of the building to GSA. Gilroy and Sims assembled a group of investors and entered into a certificate and agreement of limited partnership to form a Missouri limited partnership known as Gilroy, Sims & Associates, Ltd. (Gilroy, Sims) on October 30, 1968. The certificate and agreement provide that "the Partnership shall engage in the business of owning or leasing real estate known as 210 N. 12th Street in St. Louis City, Missouri, building upon said real estate and leasing said real estate, and all matters incidental thereto, including the borrowing of money." Gilroy, Sims was a limited partnership, whose original general partners were Richard D. Gilroy and William H. Sims and whose original limited partners were Green, Murphy, Max Lubin[4] and Morris Schenker.[5]
Gilroy, Sims sought construction and permanent financing for the building located at 210 North 12th Street from Mercantile Trust Company National Association (Mercantile) and American National. On December 4, 1968, Mercantile committed to loan the principal amount of $11,500,000 as construction financing to Gilroy, Sims, payable over a twenty-seven year term contingent upon American National's commitment for permanent financing of the project and assignable by Mercantile to American National upon completion of the construction. Mercantile provided the construction financing and plaintiff provided the permanent financing for the building located at 210 N. 12th Street pursuant to the promissory note, the deed of trust and security agreement dated May 16, 1969 and executed by Gilroy and Sims on behalf of Gilroy, Sims in their capacity as the general partners. In consideration for its commitment and agreement to provide permanent financing, Gilroy, Sims agreed to assign to American National the government lease dated September 17, 1968 entered into between GSA and Gilroy, Sims on the same date.
On May 16, 1969, Mercantile loaned Gilroy, Sims $11,500,000 in return for a promissory note executed by the partnership. Pursuant to the terms of the American National commitment letter, the limited partners executed and delivered to American National a personal guaranty of note and mortgage, also dated May 16, 1969, whereby the limited partners personally guaranteed the first $2,000,000 of the loan. The terms of the guarantee provide that it "shall be automatically terminated and shall be of no further force and effect at such time as the indebtedness evidenced by the Note and secured by the [deed of trust] has been paid down to nine million five hundred thousand dollars ($9,500,000)."
Upon completion of construction in April of 1971, Mercantile assigned the promissory note, the deed of trust and the security *975 agreement to American National as the permanent lender. The Buy-Sell Agreement, executed simultaneously on May 16, 1969 with the deed of trust and note, memorialized the take-out arrangement. The building had been leased by Gilroy, Sims to GSA on behalf of the United States as lessee for a term of twenty years starting at building completion. As additional security for the payment of the mortgage, section 11 of the deed of trust provided for the assignment of rents of the premises.[6]
On April 30, 1976, Gilroy entered into an agreement releasing and assigning his interest in the partnership to Gilroy, Sims. In return, the partnership agreed to hold him harmless for any loss or expense arising out of the building located at 210 N. 12th Street. The no implication section of the agreement provides that
Thomas R. Green, Morris Schenker, John T. Murphy, Jr. and the Estate of Max Lubin, Deceased are referred to in this Agreement as `Limited Partners' for the sole reason that is the way they are referred to in the Certificate and Agreement of Limited Partnership. The reference to them as Limited Partners shall not be taken to imply that they are not in fact liable as general partners.
On December 31, 1976, Gilroy, Sims became a general partnership known as Gilroy, Sims & Associates. At this time the limited partners of Gilroy, Sims executed a Restated Agreement of partnership and thereby became general partners of Gilroy, Sims & Associates. The purpose of the Restated Agreement was to accurately reflect the relationship of the partners. Section 5 of the Restated Agreement provides that the partnership was deemed to commence on November 1, 1968. Paragraph 10 of the Restated Agreement provides that "[t]he partners shall have unlimited liability for the debts of the partnership and shall be responsible as general partners under the law applicable thereto." Section 17 permits the partners to assign all or part of their interest in the partnership to a trustee so long as such assignee(s) held such interest subject to all the provisions of the partnership agreement. American National was not notified of the change in the status of the partnership.
On January 15, 1982, Sims executed a trust agreement naming himself as the beneficiary under the trust and assigned all of his interest in Gilroy, Sims & Associates to Michael E. Sims, trustee of the Sims trust, and executed a trust indenture, a revocable, intervivos trust. Sims assigned to the trust "all of his interest in the partnership known as Gilroy, Sims & Associates, subject to all of the provisions of the Restated Agreement of Partnership dated December 31, 1976...." Three months after the assignment of his partnership interest to the trustee, William Sims died. Since the time of Sims' death, Michael Sims has managed the trust for the benefit of his mother and Sims' widow, Betty Ann Sims. By order dated March 12, 1984, the probate division of the St. Louis County Circuit Court discharged trustee, the personal representative of Sims' estate. Trustee failed to notify by mail American National of Sims' death. Gilroy, Sims never attempted to value Sims' interest in the partnership or to distribute the value of his interest in the partnership pursuant to § 358.420, Mo.Rev. Stat. Trustee received partnership distributions until 1992.
In the fall of 1990, Gilroy, Sims & Associates stopped making mortgage payments to American National, leaving a deficiency due under the note and deed of trust. On November 19, 1990, American National sent certified letters to Gilroy, Green and trustee apprising them of the default of the note by Gilroy, Sims & Associates and its intention to accelerate the maturity of the note, to invoke its rights under the assignment of lessor's interest, to post notice of foreclosure and to sell the property located at 210 North 12th Street unless the outstanding payments due under the note were made. After receiving no response, American National sent another certified letter notifying the recipients of its election to accelerate the entire principal, interest and all other charges due under the *976 note, to exercise its rights under the assignment of lessor's interest and to institute foreclosure proceedings under the deed of trust.
In a foreclosure sale on April 9, 1991, American National foreclosed on the property at issue with the purchase amount of $4,298,596.00. The foreclosure sale did not satisfy the amount owing on the note so a deficiency of $1,437,840.93 is outstanding.
American National contends that it is entitled to the rents and monies due under the GSA lease prior to default inasmuch as the judgment in favor of Gilroy, Sims & Associates was not entered until after default and foreclosure. American National therefore asserts that the rents were not generated until after default and perfection of assignment. In re Mews Associates, L.P., 144 B.R. 867, 869 (Bankr.W.D.Mo.1992). Defendant Michael E. Sims opposes American National's motion for summary judgment directed to Count I raising the assignment, the Assignment of Claims Act and waiver and abandonment in support thereof. Defendants Green and Murphy adopted Sims' responsive pleading in opposition to American National's request of the judgment award funds from the GSABCA in the Court's registry.
Inasmuch as the United States has voluntarily interpleaded the judgment fund in the registry, the Court will not address the argument that the assignment is void under the Assignment of Claims Act.
Defendants contend that American National is not entitled to the judgment proceeds because the rents and monies due under the GSA lease prior to default are the source of the proceeds. The assignment of lessor's interest would entitle American National as the mortgagee upon default to collect rent and apply it to the outstanding mortgage debt if American National can establish:
(1) Proper documentation of the assignments;
(2) Proper recording of the assignments in the form required interest in real estate;
(3) Default on the part of the assignor;
(4) Possession of the premises by the assignee; or
(5) Action equivalent to possession by the assignee.
In re Mews Associates, L.P., 144 B.R. at 868-69.
Under the express terms of the assignment of lessor's interest in the government lease executed on April 22, 1971, "the assignee shall receive and hold the rental proceeds acquired hereunder for the satisfaction or payment of any and all indebtedness then due from the Assignor to the Assignee under or by virtue of that certain note made by the Assignor which has been negotiated and assigned to the Assignee dated May 16, 1969." By assigning the deed of trust, including the assignment of rents provision to American National on April 22, 1971 at the same time as the purchase of the note from Mercantile, Mercantile effectuated a security interest in the lease. Both the deed of trust and the assignment of lessor's interest were recorded with the Office of Recorder of Deeds in St. Louis City on April 22, 1971. In the fall of 1990, Gilroy, Sims & Associates stopped making mortgage payments to American National and thereafter American National instituted foreclosure proceedings under the deed of trust.
Although the disputes resolved by GSABCA resulting in a judgment of $283,110.72 in favor of Gilroy, Sims & Associates occurred during the course of the lease with GSA, American National, by invoking its assignment following the default, by filing a notice of assignment with the GSA and thereafter by receiving monthly rental payments for the months between default and foreclosure, followed action equivalent to possession. Consequently, American National extinguished Gilroy, Sims & Associates' interest in the judgment.
With respect to the trustee's motion for summary judgment on American National's deficiency judgment claim, the Court finds that trustee is liable for the deficiency by virtue of Sims' retention of his control over the trust assets during his lifetime and trustee continuing his father's role as a general partner in Gilroy, Sims & Associates.
On the record before it, the Court concludes that the partnership treated William *977 Sims' death as a non-event for purposes of partnership distributions inasmuch as no valuation, action for accounting or dissolution of the partnership occurred. R.S.Mo. §§ 358.010, 358.420.
Trustee argues that he was never a partner in either the general or limited partnership inasmuch as he was never named as a partner in any of the partnership agreements, never held himself out as a partner, and the January 15, 1982 assignment did not assign to him Sims' partnership interest. A review of the 1968 and 1976 partnership agreements reflects that trustee was never a partner in either partnership.
Under the Uniform Partnership Act (UPA), partners are allowed to transfer or assign their interest to a third party. In re Forrest, 146 B.R. 238, 241 (Bankr.W.D.Mo. 1992). Section 358.270 provides in relevant part:
A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle assignee, ..., to interfere in the management or administration of the partnership business ...; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled.
A person not a partner may be liable for a partnership debt if the person represented himself to be a partner in a business dealing with another who relies upon the representation to his detriment thereby resulting in debt based upon the reliance. Feeders Warehouse, Inc. v. Rader, 612 S.W.2d 872, 873 (Mo.Ct.App.1981). The partnership agreement need not be written but may be expressed orally or implied from the acts and the conduct of the parties, with the intent of the parties being the primary criterion for determining whether such relationship exists. Bernard McMenamy Contractor, Inc. v. Kitchen, 692 S.W.2d 817, 820 (Mo.Ct.App.1985). The parties' intent to enter a relationship which in law constitutes a partnership is necessary, not the intent to form a partnership. Id. Dealings between partners need not follow any particular format. In re Forrest; 146 B.R. at 241; Kielhafner v. Kielhafner, 639 S.W.2d 288, 289 (Mo.Ct.App.1982). Thus, the fact that trustee is not named as a partner in the agreements is not necessarily determinative of his status as a partner if from his conduct an intent to be a partner can be established.
Section 358.070, R.S.Mo., provides in relevant part: "(4) the receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business...." Trustee received profit distributions from Gilroy, Sims & Associates for nine years after Sims' death in the same percentage as Sims had received prior to his death so that the manner in which the parties shared profits is further evidence of trustee's partner status. In re Newman, 875 F.2d 668, 670 (8th Cir.1989) (determination under Missouri law that business operated as partnership supported by evidence showing that debtor and wife worked together in business and shared in profits). As further support of trustee's status as a partner, the Court notes that not only did trustee conduct partnership business by executing several documents, such as the amendment to the lease as owner, on behalf of the partnership, he participated in the day-to-day partnership affairs by acting as the manager of the partnership property until the default occurred. Bernard McMenamy Contractor, Inc. v. Kitchen, 692 S.W.2d at 821 ("[i]ndicia of a partnership relationship include a right to a voice in management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors").
On the record before it the Court concludes that the evidence of receipt of partnership profits combined with management of partnership business and the signature of partnership documents as owner is sufficient evidence of partnership status on the part of trustee. By 1978 trustee was responsible for all the daily operations of the building in his capacity as the building manager. The Court finds that trustee presented himself as a partner and was treated as a partner.
The Court also finds Sims' transfer of his partnership interest to trustee was subject to the terms of the partnership agreement, including *978 partnership liabilities. Section 17 of the Restated Agreement allows a partner to assign his interest in the partnership "provided that such assignee or assignees shall hold said interest subject to all provisions of this partnership agreement." Section 10 of the Restated Agreement provides for unlimited liability for the debts of the partnership for all partners. The Missouri partnership law in effect at the time of the execution of the Restated Agreement provided that gifts in trust for the benefit of donors are void as to creditors. See Mo.Rev.Stat. § 428.010 (1978) (repealed 1986). The legislature amended § 456.080.3, Rev.Mo.Stat. (Supp. 1990), at the time of the repeal of § 428.010 to clarify that revocable grantor trusts are not exempt from the operation of the law of fraudulent conveyances. Citizens Nat'l Bank v. Cook, 857 S.W.2d 502, 506 (W.D.Mo. 1993).
With respect to defendants Green and Murphy's motion for summary judgment for the remaining deficiency, the Court finds that defendants are liable for the remaining deficiency pursuant to the terms of the Restated Agreement.
Even though the Restated Agreement signed by Green and Murphy provides that "the partners shall have unlimited liability for the debts of the partnership," Green and Murphy contend that as incoming partners they are liable for prior debts only to the extent of partnership property and are absolved of personal liability under § 17 of the Uniform Partnership Act. An incoming partner, however, may by agreement bind himself to personal liability for past debts. See Resolution Trust Corp. v. Teem Partnership, 835 F.Supp. 563, 570 (D.Colo.1993) (some jurisdictions interpreting parallel statutes have held that UPA § 17 does not apply to incoming partner who expressly assumes pre-existing obligation).
The dispositive issue before the Court is whether Green and Murphy assumed personal liability for the pre-existing debts and, if so, to what extent. In executing the Restated Agreement, defendants failed to limit the debts or time period of the debts for which they assumed unlimited liability, but instead assumed liability as general partners for all of the debts of the partnership in section 10. Defendants expressly adopted the partnership obligation incurred prior to their execution of the Restated Agreement by their words as well as their actions. Moreover, section 5 of the Restated Agreement describing the duration of the partnership specifically provides that the partnership commenced on November 1, 1968.
Under Missouri law, limited partners are not liable as general partners if they do not take part in the control of the day-to-day business operations of the partnership. First Wisconsin Nat'l Bank v. Towboat Partners, Ltd., 630 F.Supp. 171, 176 (E.D.Mo.1986) (limited partners not liable if only possible control was over expenditure of funds from extended line of credit agreed to by limited partners under restructuring agreement to keep partnership afloat). Although Green and Murphy's limited partner status would ordinarily limit their potential liability to creditors, their active roles in taking part in the control of the business subjected them to potential general partner liability.

JUDGMENT AND ORDER
Pursuant to the memorandum filed on this date and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff American National Insurance Company's motion for summary judgment with respect to Count I of the first amended complaint shall be and it is granted.
IT IS FURTHER ORDERED that the Clerk of the Court shall remit the judgment proceed funds being held in the registry of the Court in the sum of $283,110.72, plus all accrued interest, as directed by the Court in the Order of September 30, 1993 to plaintiff American National Insurance Company.
IT IS FURTHER ORDERED that plaintiff American National Insurance Company's (American National) motion to deny or, in the alternative, to continue the motion for summary judgment of defendants Thomas R. Green and John T. Murphy shall be and it is denied as moot.
*979 IT IS FURTHER ORDERED that the request of defendants Green and Murphy for oral argument shall be and it is denied.
IT IS FURTHER ORDERED that defendants' motion for additional jury instructions shall be and it is denied as moot.
IT IS FURTHER ORDERED that all motions in limine shall be and they are denied as moot.
IT IS FURTHER ORDERED that American National's motion for summary judgment directed to Count II of its first amended complaint shall be and it is granted.
IT IS FURTHER ORDERED that defendant Michael Sims' motion for summary judgment shall be and it is denied.
IT IS FURTHER ORDERED that defendants Green and Murphy's motion for summary judgment on Count II of American National's first amended complaint and second amended counter claim and cross claim shall be and it is denied.
NOTES
[1] On April 26, 1993, American National filed its second amended complaint in this matter as well as a counterclaim and crossclaim against all defendants.
[2] On May 10, 1991, the GSABCA rendered its decision in the consolidated appeals arising from disputes concerning rents and monies due under the lease in favor of Gilroy, Sims & Associates in the amount of $218,002.92, plus interest accrued (judgment funds). By order of the GSABCA dated October 28, 1991, the GSABCA increased the amount to the sum of $283,110.72. GSABCA denied appeal no. 10934 on April 6, 1992. The United States claims no interest in the judgment funds.
[3] Although defendants Green and Murphy argue that there was no consideration in exchange for the 1971 assignment of lessor's interests in their pretrial brief, defendants failed to raise this contention in their opposition or motion for summary judgment.
[4] Max Lubin died in March of 1972 and on August 31, 1981, the co-executors of his estate were discharged by the St. Louis County Probate Court.
[5] Prior to his death in August of 1989, Schenker filed a Chapter 11 petition for bankruptcy. On April 25, 1991, Judge Barta, United States Bankruptcy Judge, entered an order discharging the debtor, Morris Schenker, from all debts existing prior to the commencement of the bankruptcy action.
[6] This section specifically provides as follows: In the event of any default in any of the covenants or conditions of this instrument, the rents of the premises are hereby assigned to the Beneficiary as security for the payment of the indebtedness secured thereby.