Betty (Sagehorn) ALEXANDER,
Plaintiff-Respondent,

v.

Marvin SAGEHORN,
Defendant-Appellant.

No. 11411.

Missouri Court of Appeals,
Southern District,
Division One.

May 21, 1980.

David R. Odegard, James, Odegard, Millert & Houdek, Kansas City, Gene S. Martin, Lamar, for plaintiff-respondent.

John R. Miller, Lamar, Vernie R. Crandall, Carthage, for defendant-appellant.

PREWITT, Judge.

Plaintiff filed a petition in equity to set aside the portion of a decree of dissolution of marriage which approved and incorporated a property settlement agreement be-

tween plaintiff and her former husband. If it was set aside, plaintiff requested the court to then distribute the marital property of the parties as provided in § 452.330, RSMo Supp.1975. The basis for the relief sought was fraud, due to a misrepresentation by defendant of the value of certain marital property and a claim that defendant had a duty to make a complete disclosure of the value of the marital property to plaintiff, which he did not do. Following the trial, the court set aside that part of the judgment approving and incorporating the property settlement agreement, made a different division of the marital property than was provided in that agreement, and awarded plaintiff attorneys fees.

Defendant contends that plaintiff cannot bring an action in equity as she had an adequate remedy at law for damages, and made no offer to restore defendant to the status quo; that there was insufficient evidence to support the court's action; and that the court erred in awarding plaintiff attorneys fees because there was no statutory authority or contractual provision providing for such fees.

The principal marital asset was 1,840 acres of farm land. Plaintiff testified that after she had retained an attorney and filed a petition for dissolution, she discussed with defendant the value of this land, and he said it "would average out $175.00 an acre". She said this conversation occurred shortly before they agreed to the separation agreement. Defendant denied making any such statement. He was not represented and her attorney had no part in the negotiations of the agreement. The negotiations were between her and defendant, with the aid of a "friend". Plaintiff testified that defendant also told her that the indebtedness on the property was "around two hundred thousand". She said that after receiving this information she calculated the value of the farm properties by taking $175 times 1,840 and then deducted the indebtedness, to receive a "net or equity in the property" of "a little over a hundred thousand". When she thereafter agreed to take fifty thousand dollars as her interest in that land, she did so because she thought that

was approximately half of the land's value. The property settlement agreement was signed on October 23, 1975, and the dissolution granted on October 26, 1975. At the time this action was filed she had not received the fifty thousand dollars, although the time for its payment had passed and no extension agreement had been made. In financial statements defendant valued the 1,840 acres, excluding indebtedness on it, at $552,600 on June 17, 1972, and at one million dollars on January 28, 1977. In an "Antenuptial Agreement" dated July 29, 1976, he valued the land at one million, one hundred thousand dollars. An appraisal made March 23, 1977, valued the land at $814,145. The appraiser testified that since October of 1975 the value of such farm properties had increased ten or eleven per cent.

As no findings of fact were requested or made, we presume that the trial court found the facts in accordance with the result reached. *Rollins v. Schwyhart,* 587 S.W.2d 364, 368 (Mo.App.1979). The credibility of the witnesses is determined by the trier of fact and when there is conflicting testimony, deference is given to the trial court's conclusions. *In re Marriage of Reagan,* 589 S.W.2d 118, 120 (Mo.App.1979). Under Rule 73.01, V.A.M.R., our review in this court tried case is to sustain the trial court's determination, unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

A fraud victim may elect to stand upon the contract and sue for damages in a tort action at law, or elect to rescind the contract and sue to have the same cancelled in equity. *Hostler v. Holland Furnace Company,* 327 S.W.2d 532, 534 (Mo.App. 1959). Plaintiff has elected to have the agreement rescinded and we now consider whether there was evidence to support the trial court's determination. The elements to set aside a property settlement agreement are the same as in any action for

relief on the grounds of fraud: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity; (5) his intent that the statement should be acted upon by the other party in the manner contemplated; (6) that party's ignorance of the falsity; (7) reliance on the truth; (8) the right to rely thereon; and (9) injury. *Troxell v. Troxell*, 563 S.W.2d 135, 145 (Mo.App.1978).

■ Element numbered one above has been met. It was disputed whether a representation on value was made, but plaintiff so testified and her testimony would support the court's finding. Statements as to the value of property do not ordinarily constitute fraud, being considered merely an expression of opinion. *Shepherd v. Woodson*, 328 S.W.2d 1, 6 (Mo.1959). However, such representations may amount to fraud if the representing party has special knowledge and the other is ignorant in respect to the value which is known to the representing party and the representations are made with intention that they be relied on. Id. Also see *Troxell v. Troxell*, supra. There was evidence that defendant had special knowledge of the value and that the plaintiff was ignorant of the value. It is a fair inference that defendant knew of plaintiff's lack of knowledge as to the land's worth and knew that plaintiff would rely on his representation of its value.

Element number two was shown by the appraisal and defendant's representations as to the value of the land before and after the statement to plaintiff. Element three, materiality, is shown as it is a fair inference from their conduct and conversations that both parties knew that the value of the property was to be one of the principal considerations in agreeing to a division of their property. The negotiations contemplated a cash settlement to plaintiff for her interest in the property. Element four, defendant's knowledge of falsity is shown by his statements of higher value. Five, the intent that it should be acted upon in the manner contemplated, can be inferred as the parties were discussing the division of the marital property, and defendant should

know that plaintiff might act upon the value given in determining what amount of cash she would agree to receive. Element six is present as plaintiff testified that before the dissolution she did not know the value of the land. She had no experience or training regarding the value of farm land and had not participated in the purchases other than signing notes and deeds of trust. Element seven is shown as plaintiff testified she relied on the represented value in determining what amount of cash she would take in settlement of her interest in the property.

■ Defendant seriously questions whether the evidence shows element eight, her right to rely on the representation. He claims that she was familiar with the nature and extent of the real estate and that her attorney had been furnished with legal descriptions of it. Defendant says that she had ample opportunity to investigate the value; that at the time of the alleged misrepresentation a dissolution action had been filed and that the parties were adversaries; and she should not have relied on defendant's statement of value. The general doctrine which denies the aid of equity to one who neglects means of information within easy reach, does not apply when the fraud consists of a positive representation intended to induce the very conduct which then results. *Dewey v. Jenkins*, 567 S.W.2d 382, 387–388 (Mo.App.1978). One may act upon a positive representation of fact, notwithstanding that means of knowledge are open, particularly where the facts may be assumed to be within the knowledge of the person who declares it. Id.

■ Plaintiff testified that at the time the representation was made, although separated, she and defendant were still "friendly". They had been married for twenty-five years and had children still at home. She had no knowledge of the value of the property, and he did. Had the statement of value not been made, plaintiff might have taken some action to determine the value, but having been told by someone who purported to know, she relied on that figure. We believe that the evidence sup-

ported the finding that she had a right to rely upon his statement of the value of the property. Element nine, her injury, is present as the evidence shows she should have received more of the marital assets or more in value than she did. She subsequently received substantially more in assets by the court's order redistributing the material assets.

We need not decide if there was an obligation by the husband to disclose the value of the marital property, as there was evidence to support a finding of an express misrepresentation.

 There is no merit to the contention that before seeking to set the approval of the agreement aside that plaintiff should have returned what she received in the property settlement agreement to defendant and restored him to the "status quo". We see no reason that she would have to return anything to defendant to bring this action, as the evidence showed that at the time of their marriage they had few assets, and that everything they owned at the time of the dissolution was marital property. Defendant would have had no more right to possession or use of their assets than she would until distributed by the court.

■ We now consider defendant's contention that no attorneys fees should have been awarded because this was an "ordinary equity suit" and there was no statutory or contractual provision for such fees. Defendant relies on *In re Kerr*, 547 S.W.2d 837 (Mo.App.1977), and *Herhalser v. Herhalser*, 401 S.W.2d 187 (Mo.App.1966). *Kerr* states that as a general rule attorneys fees are personal in nature and unless authorized by statute or allowed by a court of equity in unusual circumstances, they are not allowable as "costs". In *Herhalser*, the plaintiff brought an action for specific performance of certain provisions of a property settlement agreement. The court determined that the enforceability of the agreement was not dependent upon a prior action for separate maintenance and thus attorneys fees could not be allowed on the theory that the action was "ancillary" to the separate maintenance action. Neither case is controlling here. Section 452.355, RSMo Supp.1975, gives the trial court statutory authority to grant attorneys fees when making, as it did here, a disposition of marital property under § 452.330, RSMo Supp. 1975. No complaint is made as to the amount of the fees or the lack of evidence to support the fees granted. Considering the relevant factors, the trial court did not abuse the broad discretion given it under § 452.355 in awarding attorneys fees. See *In re Marriage of Brewer*, 592 S.W.2d 529, 536 (Mo.App.1979).

The judgment is affirmed.

All concur.