Robert T. HEWLETT, Appellant,

v.

Patricia R. HEWLETT, Respondent.

No. WD 45695.

Missouri Court of Appeals,
Western District.

Jan. 26, 1993.

Regina Keelan Bass, Anita I. Rodarte, Thayer, Bernstein, Bass & Monaco, P.C., Kansas City, for appellant.

Ann E. Robards, Karen K. Howard, Ronald C. Thiewes, Kansas City, for respondent.

Before BERREY, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

This case involves an order setting aside a decree of dissolution on the basis of fraud. Robert T. Hewlett appeals from the trial court's order finding that he had undervalued marital assets, overstated certain marital liabilities, and concealed several other assets in the property settlement agreement. The trial court found fraudulent concealment and misrepresentation of assets in an amount of at least $1.2 million, and set aside the decree of dissolution.

Judgment is affirmed.

Robert T. ("Husband") and Patricia R. ("Wife") Hewlett were married on December 22, 1960 and they had three children during their 29 year marriage. Wife worked as a full-time homemaker raising the couple's three children. Husband worked in the automobile sales industry for thirty years. He owned a partial interest in Bob Allen Ford Company and Bob Allen Investment Company, and also had certain other business and real estate interests. Husband handled all of the couple's financial matters. The Hewletts separated in January, 1989. Husband filed for divorce on July 14, 1989. The parties signed a property settlement agreement. The decree of dissolution was issued on January 2, 1990.

On December 31, 1990, Wife filed a motion to set aside the judgment on the basis of Husband's alleged fraudulent representations incorporated in the property settlement agreement. After an extensive hearing, the trial court made the following findings: that Husband incorrectly valued the marital assets and liabilities by at least $1,225,000.00; that Husband intended that Wife rely upon his representations in negotiating the property settlement; that Wife believed and relied on Husband's representations in negotiating the property settlement; that Wife had a right to rely thereon; that Husband knew or should have known that these representations were false; and that Wife was damaged by at least $500,000.00 as a result of her reliance upon Husband's representations. Based upon these findings, the trial court set aside the decree of dissolution.

The trial court found the following assets of Husband undervalued: his ownership interest in Bob Allen Investment Company, his ownership interest in MidAmerican Insurance Company, a Connecticut General Insurance policy, his 401K plan, and an account at United Missouri Bank. The trial court found that two debts were overstated, one owed to Bob Allen Ford and one owed to MidAmerican Bank and Trust Company. Finally, the trial court found that Husband concealed the following assets: stock in Edward D. Jones & Co.; stock in Kidder, Peabody, et al; an interest in KCD Distributors; an interest in Transoceanic Casualty Company; a partnership interest in Hewlett–Wiegers Partnership;[1] and facts related to the nature of the United Missouri Bank account and $24,000.00 spent from the account.

This appellate court must affirm the trial court's decision in this court-tried case unless it is against the weight of the evidence,

---

1. The trial court found that Husband was a partner in the Hewlett–Wiegers Partnership and that he concealed this fact from Wife, but that the debt of the partnership was equal to its assets, and, thus, wife was not damaged by this concealment.

erroneously declares the law, or erroneously applies the law. *Brawley v. McNary,* 811 S.W.2d 362, 365 (Mo. banc 1991). The evidence and all inferences therefrom should be viewed in the light most favorable to the trial court's decision and all evidence and inferences to the contrary should be disregarded. *Bass v. Rounds,* 811 S.W.2d 775, 777 (Mo.App.1991). This court defers to the trial court's credibility determinations and the trial court is free to believe all, part or none of any witness' testimony. *Kaiser v. Pearl,* 670 S.W.2d 915, 918 (Mo.App.1984).

### Setting Aside Judgment for Fraud

■ Rule 74.06 allows a trial court to set aside a judgment based on a finding of fraud. A party seeking to have a judgment set aside for fraud may proceed in one of two ways: 1) if not more than one year has elapsed since the judgment or order has been entered, the party may file a motion to set aside the judgment under Rule 74.06(b) for intrinsic fraud (which pertains to the merits of the cause) or extrinsic fraud (which is collateral to the merits of the cause); or 2) if more than one year has lapsed since the judgment or order has been entered, the party must bring an independent action alleging only extrinsic fraud in accordance with Rule 74.06(d). *See McKarnin v. McKarnin,* 795 S.W.2d 436, 439 (Mo.App.1990).

■ In the present case, the decree of dissolution was entered on January 2, 1990. Wife filed her motion to set aside the judgment for fraud on December 31, 1990, within one year of the judgment entry. Thus, Wife is entitled to allege claims of intrinsic or extrinsic fraud. Wife's claims of error allege intrinsic fraud on the part of Husband.[2]

■ In asserting a claim of fraud, a party must prove the following elements: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of the falsity (or the speaker's awareness that he/she lacks knowledge of its truth or falsity); 5) the speaker's intent that the statement be acted upon by the other party in the manner contemplated; 6) that party's ignorance of the falsity; 7) reliance on the truth; 8) right to rely thereon; and 9) injury. *Curtis v. Kays,* 670 S.W.2d 887, 891 (Mo.App.1984). In his first point on appeal, Husband attempts to argue that the trial court erred in setting aside the parties' property settlement agreement on the basis of fraud because the finding was not supported by the evidence. Although the trial court found many assets to have been either misrepresented or concealed, a single finding of misrepresentation or concealment rising to the level of fraud is a sufficient basis upon which to set aside the judgment. Thus, this court reviews the evidence with an eye to determining if the evidence supports a finding as to any material asset.

### Valuation of Interest in Bob Allen Investment Company

■ Mr. Hewlett owned a 50% interest in Bob Allen Investment Company. This company held as assets four parcels of real estate, an automobile dealership known as Metro Ford, and a leasing company known as Metro Leasing. The trial court found that Husband represented to Wife and her counsel that his interest in the Bob Allen Investment Company had a value of $432,276.00, whereas, the court found, it was actually worth at least $1,400,000.00, even without inclusion of any factor for goodwill. Husband claims that he made no false representations regarding the value of the investment company. The record shows that he and his attorney provided Wife and her attorney with many financial

---

**2.** Appellant's contention that the alleged fraud must be shown by "clear, cogent, and convincing evidence" fails to recognize the distinction between extrinsic fraud (as to which that standard is applicable) and intrinsic fraud, which is alleged in this case. *See Orrock v. Crouse Realtors, Inc.,* 813 S.W.2d 929, 932 (Mo.App.1991).

We find no authority for the proposition that the standard of proof in this case is any different from that in the usual fraud case. *See Crawford v. Smith,* 470 S.W.2d 529, 531–532 (Mo. banc 1971) (rejecting notion that fraud must be proved by clear, cogent, and convincing evidence).

records.[3] Husband stated that he relied on his accountant, Daniel Beattie, for the valuation of $432,276.00 and that the valuation was a statement of opinion, not one of fact. He states that Wife and her attorney had the information, opportunity and means to obtain an appraisal of the business, and since she chose not to obtain an appraisal, she is now barred from claiming fraud. Wife's attorney in the divorce case, Mr. Williams, testified that he examined the financial information provided, and he decided that the estimates of value seemed appropriate to him.

Wife claims that Husband knew the value of the investment company was much higher than the valuation he provided. At trial of the motion to set aside the judgment, Wife presented exhibits showing that prior to the dissolution hearing, Husband had valued the interest substantially higher in financial statements and corporate annual reports.[4] Wife presented the testimony of Mr. Beattie, who testified that he was never requested to formally appraise the investment company. Beattie stated that he was asked to prepare computations to enable Husband to find a formula for the purpose of valuing the dealership. Beattie testified that he did not know how the $432,276.00 value was determined by Husband, and that Husband's counsel told him the value was negotiated between the parties' counsel. Wife presented as an expert Thomas Slack, who testified that Bob Allen Investment Company had a value of be-

tween $5,300,000.00 and $6,000,000.00. Slack valued the goodwill at $2,569,965.00.

■ Husband argues that the value he represented to wife ($432,276.00) was a statement of his opinion and not a statement of fact. A statement of value is ordinarily considered an opinion. The exception occurs when "the representing party has special knowledge and the other is ignorant in respect to the value which is known to the representing party and the representations are made with intention that they be relied on." *Alexander v. Sagehorn*, 600 S.W.2d 198, 201 (Mo.App. 1980). Evidence was presented that Husband had special knowledge of the interest's value. Husband was actively involved in the auto dealerships as an executive as well as a major stockowner. Although Mr. Beattie and Mr. Wiegers, a co-owner with Mr. Hewlett, presented testimony designed to persuade the court that Mr. Hewlett had very limited financial acumen, the court was not bound by this testimony. Mr. Hewlett had executed financial statements which represented the value of his interest as being substantially higher on numerous occasions prior to the divorce. On all of the statements he represented the value of his interest as being in excess of one million dollars, and the mean average value shown on the statements was approximately $1.9 million. In 1986, a stockholder's agreement negotiated between Mr. Hewlett and others valued his interest in the investment company at over $2.7 million. These documents could be considered

---

**3.** The records provided to counsel for Mrs. Hewlett included copies of individual income tax returns, accountant's financial statements of Bob Allen Investment Company and Bob Allen Ford, Inc., for 1986 through 1988; stockholder agreements of Bob Allen Investment Co.; Southtown Motors; and Bob Allen Ford, Inc.; promissory note of Hewlett to Bob Allen Ford; statement of MidAmerican Bank concerning Hewlett's 401K account; and unspecified documents related to certain real estate partnership interests. There were of course, many, many more documents available, which were not furnished to counsel, including such items as the corporation tax return of Bob Allen Investment Company (which would have shown large revenues and profits, *e.g.*, $43 million of revenues in

1988, and after-tax profit of over $500,000.00 after payment of substantial salaries).

**4.** Husband valued his interest in Bob Allen Investment Company substantially higher than $432,276.00 in the following documents: 1986 Ford Motor Credit Company personal financial statement ($1,012,473.00); 1988 personal financial statement ($1,600,000.00); 1989 Centerre Bank financial statement ($1,200,000.00); 1989 Merchant's Bank financial statement ($1,200,000.00); 1986 stockholder's agreement ($2,741,985.00); 1989 Kansas Corporate Annual Report ($2,408,988.00); 1988 Kansas Corporate Annual Report ($2,264,495.00); 1986 Application for Authority to engage in business in Kansas ($2,350,612.00); and 1988 Accountants Compilation Report ($2,264,495.00).

by the court as admissions of a party opponent. *In re Marriage of Brooks,* 742 S.W.2d 585, 588 (Mo.App.1987). The evidence also demonstrates that Wife was ignorant of the value. The trial court could reasonably infer from the evidence presented that Husband was aware of Wife's lack of knowledge as to the company's value and knew that Wife may rely on his representations of its value.

The second element, the representation's falsity, was shown by Slack's testimony as to the value of the interest and also by the tax returns and financial documentation presented at the hearing on the motion to set aside the judgment. The materiality of the representation is clear since the interest in the company is a substantial marital asset. Element four, Husband's knowledge of the falseness of the representation (or his awareness that he did not know whether it was true or false), is shown by the testimony of his accountant that Hewlett and his attorney did not ask the accountant to appraise his interest in the company, but instead sought information as to computations which might be used to determine a formula for ascertaining value. The trial court could have inferred that Husband did not want the accountant to value his interest because he desired to come up with his own figure, in order to mislead. There was abundant evidence that Husband either knew that the representation of value was false, or did not know whether it was true or false. If he was ignorant of the actual value, the evidence tended to show he was wilfully ignorant and was willing to recklessly state an opinion of value. The trial court could also reasonably infer that Husband intended that the false representation be acted upon in the manner contemplated in that the parties were negotiating the property settlement.

Husband argues that Wife had no right to rely on his representations because she had an attorney and had ample opportunity to make her own determinations. However, "[o]ne may act upon a positive representation of fact, notwithstanding that means of knowledge are open, particularly where the facts may be assumed to be within the knowledge of the person who declares it." *Alexander v. Sagehorn,* 600 S.W.2d 198, 201 (Mo.App.1980). In *Alexander,* the principal asset of the marriage was 1,840 acres of farm land. After filing a petition for dissolution, wife discussed the value of the land with her husband, who said it "would average out to $175.00 an acre," and informed her that the indebtedness against the land was about "two hundred thousand." Based upon these representations, wife calculated the net value of the land as being "a little over a hundred thousand," and agreed to take fifty thousand as her interest in the land. In fact, there was evidence that the land was worth close to a million dollars or more. When his former wife sought to set aside the decree on grounds of fraud, husband argued that wife had no right to rely upon any representations he made. He said she had ample opportunity to investigate the value, that the parties were adversarial to one another, and that she should not have relied on his statement of value. The court rejected the contentions of husband, holding that husband may not avail himself of the doctrine that "equity will not aid the negligent" when the fraud consists of a "positive representation intended to induce the very conduct which then results." 600 S.W.2d at 201. If Husband had made no statement of value, Wife may have taken some action to determine value, "but having been told by someone who purported to know, she relied on that figure." *Id.* In this case, Wife and her attorney had no obligation to determine value. Certainly, if the wife in *Alexander* was not required to take her own steps to value the land, it cannot be said that there was an obligation in this case, which involved assets much more difficult to appraise.

Appellant argues that the testimony of Mr. Williams, the attorney who represented her at the time of the divorce, compels the conclusion that Wife did not rely upon any representation of Husband but instead relied upon the independent investigation and advice of Wife's attorney. Mr. Williams, however, merely accepted the values he was provided, relying primarily on his faith

in the integrity of Mr. Hewlett, with whom he was acquainted, and Mr. Hewlett's attorney, for whom he had high regard. There was no evidence that the figures arrived at were negotiated in any way by Mr. Williams. The whole tone of the discussions between the parties was that Mr. Hewlett really cared that his wife be adequately provided for, even if it meant sacrifice on his part. The discussions were not adversarial in nature. The evidence showed that Mr. Williams believed Mr. Hewlett was being quite fair in offering to pay $650,000.00 cash as maintenance in gross, and that Mr. Williams was concerned about trying to handle the matter economically in order to save money for Mrs. Hewlett. There was no testimony to the effect that Mr. Williams came to understand how the figure of $432,276.00 (as the value of Bob Allen Investment Company) was arrived at by Mr. Hewlett, nor was it ever explained by anyone. Mr. Williams accepted it, believing that the total net worth of Mr. and Mrs. Hewlett was approximately $1.3 million, that things were not going very well at that time in Mr. Hewlett's business affairs, and that Mrs. Hewlett was coming out as well as could be expected. The evidence clearly reveals that any "investigation" on his part could only have been of the most superficial kind. Consequently, the reliance was on the representations, not on the independent investigation of Mr. Williams.

Wife in this case had no knowledge of Husband's business affairs. Wife was justified in relying on Husband's representations because Wife could reasonably assume Husband, as an owner of the company, would have such knowledge and that he would be in a much superior position to evaluate the company. Wife could have engaged her own valuation expert to determine the accuracy of Husband's contentions, but the law does not require that she do so. It cannot be said, as a matter of law, that her reliance was unreasonable. That was a matter for the court as fact finder.

Only one material misrepresentation constituting fraud need be shown to set aside a decree. The trial court found additional instances of misrepresentation constituting fraud[5]. We need not detail the sufficiency of the evidence to support the findings of the other instances of fraud in view of the fact that the evidence does support the finding of fraud with regard to one substantial asset. Based on the evidence, the trial court did not err in setting aside the property settlement agreement for fraud based on Husband's misrepresentations. Point I is denied.

### "Undivided Property" Provision of Separation Agreement

■ Husband's second point on appeal is that the trial court erred in failing to enforce the terms of the separation agreement with respect to undisclosed and undivided marital property. Husband urges that even if certain property was undivided, the separation agreement provided the procedure for division of any undisclosed property and any undisclosed property should have been divided in a separate proceeding rather than setting aside the entire separation agreement.

The trial court, quite understandably, concluded it would not be appropriate to treat this property as though it were later discovered property, in view of the purposeful and extensive fraud practiced by

---

5. For example, Husband and Allen Wiegers were equal owners in MidAmerican Insurance Company. Husband represented his interest in MidAmerican Insurance Company to be $63,505.00. The trial court found that the interest had a value of $169,723.00. Husband urges that he obtained the value of the insurance investment from his partner and divided it by two, thinking the value represented the entire investment, when in reality the value represented only his share. Husband did not become aware of the mistake, he says, until after the divorce when he withdrew all the cash ($119,000.00) from the investment in order to pay the cash settlement to Wife. The trial court, as judge of the credibility of the witnesses, was not required to believe Husband's explanation.

Husband also represented to the court that the value of his Connecticut General Insurance policy was zero. The trial court found that the value of the policy was $2,520.00. In the trial court's order, the court inadvertently referred to this policy as "Commercial General" instead of Connecticut General.

Husband. This is not a case of an asset being overlooked inadvertently at the time of the decree, and later discovered. Moreover, upon Wife's discovery of the fraud practiced upon her, Wife had the right to repudiate the settlement agreement and *all* the provisions of which were procured by fraud. The trial court did not err in refusing to treat this property as later discovered property under the terms of the decree.

### Estoppel

■ Husband's final point on appeal is that the trial court erred and abused its discretion by setting aside the decree and separation agreement because Wife has accepted and retained the major benefit of the contract (the lump sum payment of maintenance) and is therefore estopped from rescinding the contract.

Husband analogizes to the rule of law which prohibits a party from proceeding upon a judgment and attacking it on appeal. *See Smith v. Smith,* 702 S.W.2d 505, 506 (Mo.App.1985). The facts in this case do not fall within this rule articulated in *Smith* because here Wife merely accepted the lump sum payments while still operating in reliance upon the representations found to be fraudulent. The payments were *not* accepted *after* discovery of the fraud. Once the fraud was discovered, it was not inconsistent for her to retain the funds and to seek to set aside the judgment on the ground of fraud. Once the judgment is set aside, the trial court will have jurisdiction to order disposition of such funds as remain, and to take into consideration any funds which do not remain. Thus, we find no merit in Husband's estoppel argument. *Alexander v. Sagehorn,* 600 S.W.2d 198, 202 (Mo.App.1980) (rejecting similar estoppel contention).

### Conclusion and Summary

We are not in this case purporting to decide whether or not the property settlement agreement was procured by fraud.

Similarly, we do not herein decide the value of marital assets. We decide only whether there was substantial evidence to support the findings of the trial court, as fact finder, and whether there was any misapplication of the law. We hold the trial court did not err in setting aside the judgment. The evidence was sufficient to support the findings of the court, the decision of the court was not against the weight of the evidence, and the trial court did not misapply the law. The judgment of the trial court setting aside the decree of dissolution is affirmed. The motion of Mrs. Hewlett for damages for frivolous appeal pursuant to Rule 84.19 is denied.

All concur.