STATE of Missouri ex rel. Misty LOWRY, Appellant,

v.

Richard K. CARTER, Respondent Pro Se.

No. WD 64759.

Missouri Court of Appeals, Western District.

Oct. 4, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 22, 2005.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael Kinder, Office of Attorney General, Jefferson City, for appellant.

Richard K. Carter, Kansas City, pro se.

RONALD R. HOLLIGER, Presiding Judge.

The Department of Social Services, Family Support Division, appeals a trial court judgment setting aside a 1993 default paternity judgment against Richard Carter. The trial court set aside the paternity judgment on the basis that it was obtained through extrinsic fraud. On appeal, the Division argues that Carter's motion to set aside the judgment failed to state a claim for relief, that the trial court's order setting aside the default judgment was precluded by Carter's post-

judgment neglect and inattention to the case, and that the evidence presented was insufficient to support a finding of extrinsic fraud. We find that Carter's motion sufficiently alleged grounds to constitute an equitable claim to set aside the judgment based on extrinsic fraud. However, there was insufficient evidence in the record to support a finding of extrinsic fraud and, therefore, we reverse.

## Facts

In the early nineteen nineties Misty Lowry and Richard Carter were involved in a romantic relationship during the course of which Lowry became pregnant. Unknown to Carter, the relationship was not sexually exclusive and during the time of conception Lowry had a sexual encounter at least once with a man named Tyrone Collins. The child was born on July 3, 1992.

On January 20, 1993, Lowry signed an Affidavit In Support of Default Judgment swearing that at the time of conception her sexual relationship with Carter was exclusive. Lowry also signed Combined Petitions for Declaration of Paternity Under The Missouri Uniform Parentage Act For An Order Of Support And For Recovery Of Necessary Support Provided, filed on February 3, 1993, which alleged that Carter was the father of the child.[1] Carter did not answer the petitions and was therefore in default. Carter also failed to appear at an April 29, 1993, hearing before the Jackson County Circuit Court to determine paternity and support. The court entered a judgment finding Carter to be the father of the child and ordered him to pay $146 per month in child support.

On February 26, 2004, Carter filed a Second Amended Motion to Set Aside Judgment of Declaration of Paternity, Child Support and Necessary Support. He asked the court to order: reimbursement of any child support he paid; his name expunged from the child's birth certificate; all parties to submit to blood testing; and that the alleged father, Tyrone Collins, be joined as a third-party respondent. The trial court held a hearing on the motion. Collins, although joined as a party, was not served and did not appear at the hearing.

At the 2004 hearing, Carter testified that he was afraid to appear at the 1993 paternity hearing because of an outstanding felony warrant for his arrest in an unrelated case. Carter also testified that Lowry told the child that Carter was his father, and that Carter did not believe that he needed to be at the hearing because he thought there was no question as to paternity.

Carter first questioned whether he was the child's father in 1994 when Lowry showed him a picture of the child with Tyrone Collins. Evidence was introduced that at some time Lowry told friends that she knew Carter was not the father, while maintaining the opposite to Carter and his family. Lowry admitted at the 2004 hearing that she lied to the court when she filled out the affidavit claiming that she and Carter had an exclusive sexual relationship.

On October 1, 2004, the circuit court entered a judgment setting aside the 1993 Judgment of Paternity and Child Support finding that Lowry committed extrinsic fraud in the procurement of that judgment. The court ordered Carter's child support terminated as of October 1, 2004, and that his name be removed from the

---

**1.** No blood testing was done apparently because Carter refused or saw as unnecessary   any definitive paternity testing.

child's birth certificate. The court also found that Carter was not entitled to reimbursement of any past support payments because he failed to act within a reasonable time after suspecting that he might not be the father. The Division filed a timely appeal to which Carter has not responded.

## Discussion

■ In Point one, the Division argues that the trial court erred in setting aside the default paternity judgment because Carter's Motion to Set Aside failed to state a claim for relief. Specifically, the Division asserts that the content of Carter's motion was insufficient to invoke the trial court's equity jurisdiction because he did not plead facts amounting to extrinsic fraud.

■ Extrinsic fraud is defined as "fraud that induced a party to default or to consent to judgment against him." *State ex rel. Div. of Child Support Enforcement v. Hill*, 53 S.W.3d 137, 144 (Mo.App.2001). The Division contends that Carter must plead that he defaulted *because* of Lowry's misrepresentations in order to successfully request equitable relief from a default judgment on the basis of extrinsic fraud. The Division asserts that Carter did not plead in his motion that he defaulted because of Lowry's misrepresentations and, as such, Carter has failed to state a claim for relief.

Although extrinsic fraud was not specifically invoked in Carter's motion, the trial court treated it as an independent action in equity on that basis. Rule 74.06(d) allows the trial court to entertain such an action and set aside a final judgment more that one year after it was entered if a party committed fraud upon the court, generally referred to as extrinsic fraud. *Hill*, 53 S.W.3d at 144. Even if filed as a motion in the same case, as it was here, the trial court is free to treat the motion as an independent action in equity if its substance is "sufficient to invoke the equitable powers of the court." *Id.* Such motions are to be read liberally. *Cozart v. Mazda Distribs. (Gulf), Inc.*, 861 S.W.2d 347, 352 (Mo.App.1993).

Reading the content of Carter's motion liberally we find no merit to the Division's assertion that the motion was not sufficient to invoke the equitable powers of the court. Carter's motion states that the paternity judgment "was procured ... through means of fraud and material misrepresentation of fact, in that [Lowry] intentionally mislead [the Court and Carter] into believing that [Carter] was the natural and biological father of [Richard K. Carter, Jr.]." Additionally, language near the end of Carter's motion belies the Division's contention that Carter did not assert that the paternity judgment, or at least the requirements of the paternity judgment, resulted because of Lowry's misrepresentations. The second to last paragraph of Carter's motion states: *"[a]s a result* of Petitioner's false allegations [Carter] has unjustly paid approximately $8,758.44 to [Lowry]."* Point denied.

■ We next consider the Division's Point three because it is dispositive of the case. The Division argues that there is insufficient evidence in the record to support a judgment that extrinsic fraud actually took place. The Division contends that Carter failed to show that Lowry's misrepresentation actually induced him to default with regard to the paternity judgment. In support of its argument, the Division points to evidence indicating that the reason Carter defaulted was not a result of Lowry's misrepresentation, but because there were unrelated warrants out for his arrest and he was afraid to show up in court.

"Missouri courts have had some difficulty in defining extrinsic fraud, but the most recent cases have adopted the definition proffered in Restatement (Second) of Judgments Section 70 cmt. c (1982): 'fraud that induced a party to default or to consent to judgment against him.'" *Sanders v. Ins. Co. of N. Am.*, 904 S.W.2d 397, 401 (Mo.App.1995). Intrinsic fraud, on the other hand, is the "knowing use of perjured testimony or otherwise fabricated evidence." *Id.* Intrinsic fraud must be raised within one year of final judgment. Rule 74.06(b)(2).

In this case, the trial court found that Carter had "proven extrinsic fraud by Misty Lowry, in procurement of the judgment of paternity entered against him on April 29, 1993." There is no dispute that Lowry knew that her statement in the affidavit relied on by the trial court in entering the paternity judgment was false. However, allegations that a party knowingly fabricated evidence to procure a judgment cannot rise to the level of extrinsic fraud. *Cody v. Old Republic Title Co.*, 156 S.W.3d 782, 784 (Mo.App.2004). In order to show extrinsic fraud, Carter must go a step further and produce evidence that he was somehow induced to default by Lowry's misrepresentations.[2]

Evidence was introduced that one of the reasons Carter did not show up for the default proceeding was because he believed his sexual relationship with Lowry was exclusive and had no reason to question his biological fatherhood. That in no way suggests that Carter was induced to default or to consent to judgment by Lowry. He did not testify that Lowry told him that the relationship was exclusive or that no one else could be the father. Lowry's was a misrepresentation, if at all, by omis-

sion. Evidence was also introduced that Lowry told Carter that the child was his and allowed Carter to interact with the child as a father while maintaining to others that she knew that he was not the real father. While this brings Carter closer to the elements of extrinsic fraud, there is no indication in the record that Lowry told Carter that he was the father *prior* to the entry of the default paternity judgment. Absent evidence from the record that Lowry induced Carter to default, we cannot say that the trial court correctly concluded that extrinsic fraud took place. Therefore, we reverse because there was insufficient evidence for the trial court to reach a finding of extrinsic fraud.

The judgment is reversed.

ROBERT G. ULRICH, and JOSEPH M. ELLIS, Judges, concur.

---

**2.** This court has previously found that a misrepresentation about paternity relied on by another party could rise to the level of extrinsic fraud. *See State ex rel. Div. of Child Support Enforcement v. Hill,* 53 S.W.3d 137, 144–45 (Mo.App.2001).