**FIRST BANK OF THE LAKE, a Missouri banking corporation, Plaintiff–Respondent,**

v.

**Tracy L. WHITE, Sr. and Sharon L. White, Individually and as husband and wife,**

**and**

**Jerry W. Buck and Janet K. Buck, Individually and as husband and wife,**

**and**

**Leland C. Nollau and Thelma Nollau, Individually and as husband and wife, Defendants–Appellants.**

No. SD 29505.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 30, 2009.

Motion for Rehearing and Transfer Denied Dec. 22, 2009.

Application for Transfer Denied March 2, 2010.

Hugh L. Marshall, McDowell, Rice, Smith & Buchanan, P.C., Kansas City, MO, for Appellants.

Michael L. McDorman and J. Aaron Ellsworth, McDorman & Dunklee, L.L.C, Lake Ozark, MO, for Respondents.

GARY W. LYNCH, Presiding Judge.

Tracy L. White, Sr. and Sharon L. White, Jerry W. Buck and Janet K. Buck, and Leland C. Nollau and Thelma Nollau ("Defendants") appeal the denial of their motion, brought pursuant to Rules 74.05(d) and 74.06(b), to set aside a default judgment entered against them and in favor of First Bank of the Lake ("Plaintiff").[1] Finding that the motion court did not abuse its discretion in determining that the motion to set aside was not brought within a reasonable time, as required by both rules, this Court affirms.

### Factual and Procedural Background

Defendants guaranteed the payment of various promissory notes owed by Wildwood Development, LLC ("Wildwood") to Plaintiff that were secured by Wildwood's real estate and personal property. Beginning in April 2007, after Wildwood had defaulted in the payment of these notes, Plaintiff, through its attorney Michael McDorman, initiated collection activities, including (1) repossession of the personal property held as collateral, (2) foreclosure of the real estate with a sale date scheduled for May 11, 2007, and (3) filing, on April 16, 2007, the petition in the underlying action against Defendants seeking a money judgment on their guarantees in the total principle amount of $8,592,191.51, plus interest and attorney fees.

In response, Defendants, through their attorney Robert W. Pohl, contacted attorney R. Pete Smith to represent them in addition to Pohl, to resist Plaintiff's collection actions, including Smith's filing of a Chapter 11 bankruptcy for Wildwood, if necessary. During April and May of 2007, Pohl and Smith communicated with McDorman on several occasions seeking to come to some agreement with Plaintiff which would at least minimize Defendants' exposure to the money they had already invested in Wildwood and, at best, provide

1. References to rules are to Missouri Court Rules (2009), unless otherwise indicated.

some partial return of that investment if the real estate could be sold in the near future. Following a telephone conversation between the three attorneys on May 8, 2007, Smith sent McDorman a letter outlining what he claimed was an agreement reached during that telephone call, which included the release of Defendants on their guarantees. Smith closed this letter with the paragraph: "If this is erroneous, call me immediately, as we will need to go forward with the Chapter 11 filing. Please work out all details with Bob Pohl." McDorman made no response to Smith specifically directed to the contents of this letter, although the foreclosure sale was thereafter continued by Plaintiff for two ten-day periods, as referenced in the letter.

In the meantime, all Defendants were served on May 14 and 16, 2007, with summons in the underlying action on their guarantees. Defendants immediately contacted Pohl, who in turn contacted Smith to advise of such service. Neither attorney, however, contacted McDorman or the trial court about the status of this case, nor did either attorney file any responsive pleading on Defendants' behalf. On June 25, 2007, Plaintiff moved for and the trial court granted a default judgment in the total amount of $4,599,221.90 in Plaintiff's favor and against Defendants.[2]

One of Defendants became aware of the default judgment in early September 2007, and contacted Pohl, who in turn contacted Smith. By letter dated September 13, 2007, to McDorman, Smith expressed his "shock" at the entry of the default judgment and demanded that the judgment be released because it "was contrary to our contractual agreement and was fraudulent." In response, by letter dated October 1, 2007, McDorman told Smith:

> I will withhold at this time a formal response to this letter as we are still attempting to work out a complete resolution to this matter through Bob Pohl. In the event that it does in fact fail, you will have a complete and full response to your inquiry of September 13, 2007.

McDorman and Smith had no further communication on this issue.

On May 22, 2008, concerned that almost one year had passed since the entry of the default judgment, Smith directed his law partner to file on Defendants' behalf a motion to set aside the judgment claiming good cause and a meritorious defense entitling them to relief under Rule 74.05(d) and claiming Plaintiff's fraud, misrepresentation, and misconduct in procuring the judgment entitling them to relief under Rule 74.06. Following an evidentiary hearing, the motion court not only denied the motion on its merits, but also found that it was not filed within a reasonable period of time. Defendants timely appealed, claiming that the motion court erred in denying them relief under Rule 74.05 (Point I), that the motion court erred in denying them relief under Rule 74.06 (Point II), and that the motion court erred in finding that their motion was untimely (Point III). Our adverse decision on Defendants' last point is dispositive of this appeal.

### Standard of Review

"The party moving to set aside a default judgment has the burden of proof to convince the trial court that the party is entitled to relief." *Hinton v. Proctor & Schwartz, Inc.*, 99 S.W.3d 454, 458 (Mo.

---

**2.** The judgments in the amount of $1,610,685.00 on Count I and in the amount of $216,435.00 on Count II were entered jointly and severally against all defendants.

The judgment in the amount of $2,772,101.90 on Count III of the petition was entered jointly and severally against all defendants, excluding defendant Sharon L. White.

App.2003). Upon review of a motion court's decision on a motion to set aside a default judgment, appellate review is for abuse of discretion, and a motion court's discretion upon its denial of a motion to set aside a default judgment is much narrower than the wider discretion afforded a decision to grant a motion to set aside a default judgment "because of the public policy favoring the resolution of cases on the merits and the 'distaste our system holds for default judgments.'" *Brungard v. Risky's Inc.*, 240 S.W.3d 685, 686 (Mo. banc 2007) (quoting *Cont'l Basketball Ass'n v. Harrisburg Prof'l Sports, Inc.*, 947 S.W.2d 471, 473 (Mo.App.1997)). "However, the generalization that the law favors a trial on the merits must be carefully applied to the facts of each case because 'the law defends with equal vigor the integrity of the legal process and procedural rules and, thus, does not sanction the disregard thereof.'" *Boatmen's First Nat'l Bank, Raytown Banking Ctr. v. Krider*, 844 S.W.2d 10, 12 (Mo.App.1992) (quoting *Sprung v. Negwer Materials, Inc.*, 775 S.W.2d 97, 100 (Mo. banc 1989)).

 The movant in a Rule 74.06 motion for relief from a judgment, likewise, has the burden of proving to the trial court that he or she was entitled to relief. *Owens v. Owens*, 869 S.W.2d 324, 326 (Mo. App.1994). The motion court is afforded broad discretion when acting on a Rule 74.06 motion, and an appellate court should not interfere unless the record demonstrates an abuse of the motion court's discretion. *Jeffries v. Jeffries*, 840 S.W.2d 291, 293 (Mo.App.1992).

 "Judicial discretion is abused only when that ruling was clearly against the logic of the circumstances then before the trial court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Nervig v. Workman*, 285 S.W.3d 335, 338 (Mo.App.2009) (citing *State ex rel. Wyeth v. Grady*, 262 S.W.3d 216, 219 (Mo. banc 2008)). "If reasonable minds could differ on the propriety of the ruling, no abuse of discretion has occurred." *Id.* (citing *Heritage Warranty Ins., RRG, Inc. v. Swiney*, 244 S.W.3d 290, 291–92 (Mo.App. 2008)).

### Discussion

Rule 74.05(b) provides, in part, that "[t]he motion shall be made within a reasonable time ... after the entry of the default judgment." Similarly,[3] Rule 74.06(c) provides, in part, that "'[t]he motion shall be made within a reasonable time ... after the judgment or order was entered."

The term "reasonable time" has yet to be explicitly defined in the context of either Rule 74.05(d) or Rule 74.06(b). A sooner-better-than-later concept under Rule 74.05(d) was discussed in *Bell v. Bell,* 849 S.W.2d 194 (Mo.App.1993): "It makes sense that the sooner the mistake is discovered, and acted upon, the more receptive the courts should be to a motion to set aside. Prompt action to set aside a judgment is less threatening to the stability of the final judgment rule than action taken substantially later." *Id.* at 198. The Western District of this Court, in *Magee v. Magee,* 904 S.W.2d 514, 518 (Mo.App. 1995), as well as in *Bell, supra,* considered this concept in analyses of whether the defendant had established good cause un-

---

**3.** Defendants assert in their brief, without citation to relevant legal authority other than the language of the respective rules, that "[t]he timeliness requirements of Rules 74.05 and 74.06 are the same." Because our decision in this case does not depend upon any actual or perceived difference in these two time requirements, we accept the Defendants' premise for the purpose of resolving this appeal, without expressly so deciding.

der Rule 74.05(d). In *Myers v. Pitney Bowes, Inc.*, 914 S.W.2d 835, 838 (Mo.App. 1996), *Billingsley v. Ford Motor Co.*, 939 S.W.2d 493, 498 (Mo.App.1997), and *Heintz Elec. Co. v. Tri Lakes Interiors, Inc.*, 185 S.W.3d 787, 794 (Mo.App.2006), the concept of sooner-better-than-later was utilized in analyses of what constituted "reasonable time."

The Eastern District of this Court, in *Engine Masters, Inc. v. Kirn's, Inc.*, 872 S.W.2d 644 (Mo.App.1994), discussed the "reasonable time" requirement of Rule 74.05(d) and noted that, aside from a sooner-better-than-later observation, at that time, there was "little in Missouri case law to help determine what is a reasonable time in which to move to set aside a default judgment." *Id.* at 646. There, the defendant was advised of the default judgment one week after entry and filed a motion to set it aside 316 days after its entry. The Court noted that there were no circumstances beyond the defendant's control, no novel questions of law to require extensive preparation, no obfuscation of the court docket, no difficulty obtaining counsel, and no delay in notification of the default judgment. The Court found that the 316–day delay in filing a motion to set aside the default judgment violated the "reasonable time" limitation. *Id.* at 646. Significantly, in its finding, the Court noted that "to set aside the default judgment after such a delay, without explanation, would imply any motion made within the one year limit would be *de facto* reasonable" and "would, in essence, read the 'reasonable time' limit out of Rule 74.05(c)."[4] *Id.* at 646–47.

In its judgment here, the motion court found that "the delay of defendants in filing the motion to set aside the default judgment entered in this case although taken within one year is unreasonable given the length of time defendants were aware of the judgment. The testimony of Mr. Smith showed defendants intentionally waited for almost one year to file said motion." Further, "[t]he reason for the delay in defendants filing a motion to set aside the default was that they were waiting for Attorney McDorman to call them as stated in attorney McDorman's letter of September [sic], 2007, which letter was written over 75 days after the default judgment was entered." The motion court also noted that there was no just reason to delay the filing of a motion to set aside the default judgment, in that "[a]ny defense to the petition was known by the parties in May 2007."

Defendants' third point relied on attacking the motion court's determination that their motion was not filed within a reasonable time does not challenge the motion court's findings that they intentionally waited almost one year to file it, even though they became aware of the judgment within seventy-five days of its entry, or that any defense to the petition was known to the Defendants in May 2007, before the judgment was entered. Rather, the Defendants' point claims that the trial court erred, i.e. abused its discretion, in holding that the motion was untimely because:

(1) [Plaintiff] invited [Defendants] to delay their motion by exploring an alternative settlement with [Defendants] and by promising to advise [Defendants] when it considered such an alternative fruitless, which it never did; (2) [Plaintiff] was neither surprised nor prejudiced by

---

**4.** "What is now paragraph (d) of Rule 74.05 was previously paragraph (c). The text remains the same. The paragraph was redesignated (d) by a June 1, 1993, amendment of the rule that became effective January 1, 1994." *Crowe v. Clairday*, 935 S.W.2d 343, 347 n. 3 (Mo.App.1996).

the motion to set aside, as it knew of [Defendants'] objections and did nothing to enforce its default judgment before [Defendants] filed their motion; and (3) a motion to set aside asserting fraud is deemed timely as a matter of law if filed any time within one year of the entry of the judgment and there is no reason not to consider all of [Defendants'] arguments as equally timely, especially where [Plaintiff] is not prejudiced by them.

Each of the three bases for claimed error will be addressed in the order presented.

### Invited Delay

■ Defendants purport to support their first contention—that Plaintiff invited the delay in filing the motion to set aside the judgment—by citation, without any further explanation, to *Bogdon v. Commerce Bank*, 537 S.W.2d 650, 651 (Mo.App. K.C.D.1976). This case does not, however, lend any support to their claim. In *Bogdon*, the disputed issue involved whether reliance upon an agreement with counsel satisfied the good cause element of Rule 74.05 for allowing the default judgment to be entered in the first instance. *Id.* at 651–52. The timeliness of the filing of the motion to set aside the default judgment was not at issue in *Bogdon*. *Id.*

Citing no other relevant legal authority on this issue, Defendants are left to their bare assertion that "[t]he circuit court should have found [Plaintiff] estopped from claiming that [Defendants] are untimely when Bank itself requested their delay." While such an argument would be appropriate if we were engaging in a *de novo* review of the motion court's decision, it bears little, if any, relevance as to whether the motion court's actual finding was an abuse of its discretion.

The evidence supports that by no later than September 13, 2007, the date of Smith's letter to McDorman, Defendants and both of their attorneys knew that a default judgment in excess of four and one-half million dollars had been taken by Plaintiff on June 25, 2007, just eighty days earlier. In his letter, Smith expressed his surprise and shock "that the [Plaintiff] had surreptitiously obtained a default judgment against the [Defendants]." He further stated, "We believe that the obtaining of the judgment was contrary to our contractual agreement and was fraudulent." Yet, Defendants at that time chose not to immediately file a motion to set aside what they perceived to be a shocking, surreptitious, and fraudulent act.

Rather, Defendants waited for a response from McDorman, which did not come until almost two and one-half weeks later and which, in a brief paragraph, did not directly address the default judgment or otherwise suggest any delay in filing a motion to set it aside. Instead, McDorman's October 1 letter indicated that Plaintiff did not want to address the allegations made in Smith's September 13 letter at that time, preferring to attempt "to work out a complete resolution to the matter through Bob Pohl." According to Pohl, his efforts to effect an agreed-upon sale of Wildwood's property concluded sometime in the fall of 2007. While Defendants point to McDorman's failure to advise Smith that negotiations with Pohl had ended, they fail to recognize that they had knowledge of that fact through Pohl. Yet, once again, Defendants chose not to file a motion to set aside the default judgment when Pohl's efforts came to an end in the fall of 2007.

During the 234–day period between October 1, 2007, the date of McDorman's letter to Smith, and May 22, 2008, the date Defendants filed their motion to set aside the judgment, Defendants were content to take no action to either prompt a further response from McDorman or set aside the default judgment. While it might argu-

ably be reasonable for Defendants to wait a couple of weeks or as long as a month for a further response from McDorman, which McDorman indicated in his October 1 letter would be forthcoming, waiting 234 days for such a response strains the bounds of reason and credulity. At a minimum, reasonable minds could differ as to the propriety of such a wait, and, as such, the motion court could not have abused its discretion in determining that it was an unreasonable delay. *Nervig*, 285 S.W.3d at 338; *Heritage Warranty Ins.*, 244 S.W.3d at 291–92.

### Plaintiff's Prejudice

■ Defendants' second contention—Plaintiff "was neither surprised nor prejudiced by the motion to set aside, as it knew of [Defendants'] objections and did nothing to enforce its default judgment before [Defendants] filed their motion"—has no merit because its factual assertion that Plaintiff did nothing to enforce its judgment is not supported by any evidence in the record.

■ Additional guidance in a "reasonable time" analysis is found in *Nguyen v. Wang*, 182 S.W.3d 688 (Mo.App.2006). "In determining whether a motion to set aside a default judgment was filed within a reasonable time, we look at the underlying circumstances surrounding the delay." *Id.* at 691 (citing *Hopkins v. Mills–Kluttz*, 77 S.W.3d 624, 626 (Mo.App.2002)). "One of the underlying circumstances we consider is whether the delay resulted in substantial harm to the plaintiff." *Id.* Another underlying circumstance previously considered is "whether anything happened during the period of the delay that would adversely affect plaintiff's ability to pursue [plaintiff's] cause of action on the merits." *Hopkins*, 77 S.W.3d at 626. *See also Keltner v. Lawson*, 931 S.W.2d 477, 482 (Mo.App. 1996).

Here, the motion to set aside the default judgment was filed on May 22, 2008—332 days after the judgment was entered and at least 252 days after Defendants had notice of its entry, as evidenced by Smith's September 13, 2007 letter to McDorman. As a prerequisite to the motion court's consideration of the underlying circumstances surrounding this delay, Defendants had the burden of proving those circumstances. *See Hinton*, 99 S.W.3d at 458; *Owens*, 869 S.W.2d at 326. As part of meeting this burden, Defendants were required to present substantial evidence of those circumstances, which it failed to do.

■ In reference to Smith's September 13, 2007 letter to McDorman, Defendants assert in their brief that "[b]efore that time, Bank had not changed position in reasonable, detrimental reliance (or in any manner) on its judgment[,]" and "[Plaintiff] did nothing to enforce the judgment before [Smith] protested that it violated the parties' settlement." In addition, Defendants assert in their brief that Plaintiff "also did nothing before [Defendants] moved to set aside[.]" None of these assertions in the argument portion of Defendants' brief, however, are supported by a page reference to the legal file or transcript, as required by Rule 84.04(i).[5] "Compliance with this subpart of the rule 'is mandatory and essential for the effective functioning of appellate courts, which cannot spend time searching the record to determine if factual assertions are supported by the record. This would effectively require the court to act as an advocate for the non-complying party, a role which we expressly decline.'" *Pattie v. French Quarter Resorts*, 213 S.W.3d 237, 239 (Mo.App.2007) (quoting *Brown v. Shannahan*, 141 S.W.3d 77, 80 (Mo.App. 2004)).

---

5. "All statements of fact and argument shall have specific page references to the legal file or the transcript." Rule 84.04

Nevertheless, our review of the transcript and legal file discloses why Defendants were unable to comply with this rule; the record is void of any evidence supporting these assertions. We cannot say that the motion court abused its discretion in failing to consider or credit the lack of any prejudicial effect of the delay upon Plaintiff when Defendants, the moving parties, failed to present any evidence to the motion court of such lack of prejudice. To presume otherwise would effectively shift the burden of proof to Plaintiff, the non-moving party.

### Allegation of Fraud

Finally, Defendants contend that "where a motion to set aside asserts fraud under Rule 74.06, it is deemed timely if brought at any time within one year from the date of the judgment[.]" Defendants further assert that "a motion within a year is deemed timely because such fraud may be asserted in a separate action even after one year from the date of judgment[,]" citing *State ex rel. Div. of Child Support Enforcement v. Hill,* 53 S.W.3d 137 (Mo. App.2001) as support.

In *State ex rel. Div. of Child Support Enforcement, supra,* the movant's motion for relief from a paternity judgment alleging extrinsic fraud, filed eight years after judgment, was found to have been untimely filed under Rule 74.06(b)(2).

However, the Western District of this Court noted, "the one-year time limitation barring a claim to set aside a judgment on the basis of fraud under [Rule] 74.06(b) 'does not limit the power of the court to entertain an independent action to relieve a party from a judgment or order to set aside a judgment for fraud upon the court.' [Rule] 74.06(d)." [6] *Id.* at 144. The Court further found that "the trial court erred in not treating [movant's] motion as an independent action in equity to set aside the paternity judgment[,]" reversed the trial court's judgment dismissing the movant's petition, and remanded for further proceedings. *Id.* As Defendants here do not claim, assert, or otherwise argue that their motion is an independent action in equity outside the purview of Rule 74.06(b), as envisioned by Rule 74.06(d), *State ex rel. Div. of Child Support Enforcement* provides no support for Defendants' argument related to the timeliness of their motion under Rule 74.06(b).[7]

Defendants also rely on *Hewlett v. Hewlett,* 845 S.W.2d 717 (Mo.App.1993), to support their claim that "[p]recedent is unambiguous that a motion asserting fraud is timely as a matter of law if filed any time within one year from the entry of judgment[.]" The Western District of this Court in *Hewlett* did not address a challenge to the timeliness of the motion to set aside the judgment therein for fraud. It merely drew the distinction that a timely

---

6. Rule 74.06(d) provides, in part: "This Rule 74.06 does not limit the power of the court to entertain an independent action to relieve a party from a judgment or order or to set aside a judgment for fraud upon the court."

7. Once the time for filing a Rule 74.06(b) motion expires, Rule 74.06(d) leaves open the possibility for an independent cause of action in equity based on extrinsic fraud wherein the trial court may set aside a final judgment. *Mathers v. Allstate Ins. Co.,* 265 S.W.3d 387, 390 (Mo.App.2008). "Extrinsic fraud is 'fraud that induced a party to default or to consent to judgment against him." *Id.* (quot-

ing *State ex rel. Lowry v. Carter,* 178 S.W.3d 634, 637 (Mo.App.2005)). To set aside a judgment "on the ground of extrinsic fraud, a party must demonstrate its absence of fault, neglect, or inattention to the case." *Id.* Where the defaulting party is chargeable with neglect, that party is not entitled to equitable relief. *Id.* "Failure to allege the absence of "fault, neglect, or inattention is fatal to the action." *Reding v. Reding,* 836 S.W.2d 37, 43 (Mo.App.1992). Defendants' motion to set aside in the instant case contains no such allegation.

motion to set aside under Rule 74.06(b) could be brought for either intrinsic or extrinsic fraud, whereas an independent action in equity to set aside brought in accordance with Rule 74.06(d) may only be premised upon extrinsic fraud. *Id.* at 719. While *Hewlett* may be helpful in distinguishing between intrinsic and extrinsic fraud and the procedure under which claims of fraud may be brought, it does not support Defendants' contention that "a motion asserting fraud is timely as a matter of law if filed any time within one year from the entry of judgment." *Hewlett* does not negate in any respect the "reasonable time" component in Rule 74.06(b). Thus, Defendants' third and final contention is without merit.

### Decision

The motion court's judgment is affirmed.

RAHMEYER, J., and ZEL FISCHER, Special J., concur.